## CAMPBELL *vs.* RANKINS.

To incur the penalty under the *statute of* 1821, *ch.* 22, *sec.* 2, for carrying or transporting "*out of this State,* any person under the age of 21 years," "*to parts beyond sea,* without the consent of his parent, master, or guardian," the carrying must be to some *foreign* port or place, and not merely from *one State to another.*

THIS was a *qui tam* action of debt, brought to recover the penalty given in the statute of 1821, *ch.* 22, *sec.* 2. The material parts of the declaration were as follows. "For that the said *Rankins,* at said *Frankfort,* on the first day of *November,* 1832, being the commander of a certain outward bound vessel, called the *William,* did take on board said vessel, and carry and transport out of this State, one *William Crockett,* of said *Frankfort,* a minor under the age of twenty-one years, to *parts beyond sea,* to wit, *to Baltimore, in the State of Maryland,* without the consent of his parents, master, or guardian, contrary to the form of the statute," &c.

*John Carleton,* a witness for the plaintiff, testified, that the defendant, immediately after his return from said voyage, stated to him that he did take *Crockett* on said voyage — that he carried him to the *West Indies,* and back to *Baltimore,* in *Maryland,* and there left him. That *Campbell,* the plaintiff, as next friend of the minor, had sued him for his wages, and had recovered them. That he thought he had a right to ship said minor without the consent of *Campbell,* as he was not guardian.

It was also in proof, that *Campbell* married the mother of the minor about thirteen years since — that all the parties lived in *Frankfort* — and that no guardian had ever been appointed by the Judge of Probate.

Upon the opening of the case, the plaintiff moved for leave to amend, by filing a new count, similar to the first, with this exception, viz: after the words "to *Baltimore,* in the State of *Maryland,*" to add, "and to the *West Indies,*" or the particular place or port to which the vessel went.

The *Chief Justice,* who tried the cause, refused to permit the amendment, on objection by the Counsel for the defendant. And

upon this evidence, intending to reserve the question as to the construction of the statute, he directed a nonsuit. If either of these decisions were incorrect, the nonsuit was to be taken off, and a new trial to be had, otherwise the nonsuit to stand.

*Kent,* for the plaintiff.

The question is upon the meaning of the words *" beyond seas"* in the statute upon which this action is founded. The declaration alleges that the minor was carried to *Baltimore,* in the State of *Maryland,* and it is insisted that this falls within the terms of the statute — that, *" beyond seas"* means out of the jurisdiction of the State, whether viewed on authority or on the principle of regarding the intent of the legislature.

The passion that many boys have for going to sea, and the great facilities for their escape from their parents, by reason of our extended seacoast, undoubtedly induced the legislature to interpose by this statute to prevent it. But the intention of the legislature will be frustrated, and the statute rendered nearly useless, if it be restricted to cases of a transportation *out of the country.* Is it reasonable to suppose that the legislature intended to impose a penalty for carrying a minor from *Eastport* to *St. Andrews,* and not for carrying him from *Eastport* to *New Orleans?*

But on authority these words " beyond seas" will be found not to have been restricted in the manner supposed to be insisted on by the counsel for the defendant. The same phrase is used in our statutes of limitations, and has in numerous instances received a judicial construction. In *Murray* v. *Baker,* 3 *Wheat.* 541, it was decided that *out of the State,* fell within the scope of the phrase, *beyond seas.* So also in 3 *Cranch,* 174; 1 *Harris & McHenry,* 89, and *Byrne* v. *Crowninshield,* 1 *Pick.* 263. And 1 *Shower's Rep.* 91, *Anonymous,* may also be cited to the same point, where *Dublin* was considered by *Ld. Holt,* as *" beyond seas."*

The Counsel for the plaintiff also renewed his motion for leave to amend.

*Kelly,* for the defendant, contended, 1, that the evidence disclosed no *transporting* within the meaning and spirit of the statute. There was no fraud or force used to get possession of him; but

at his own special instance and request, he was *allowed* to go as a mariner with the defendant.

2. But if otherwise, then the penalty was not incurred, because *Baltimore* is not in *"parts beyond seas."* It is true, that in a decision of the U. S. Courts, these words as used in the statute of limitations, have received a narrow construction; yet on the whole, even as it regards the statute of limitations, the meaning of these words is *questio vexata;* for in *England,* they are used as synonymous with *foreign parts, King* v. *Waldron,* 1 *Wm. Black.* 286. So in 2 *Dallas,* 217; *Thurston* v. *Fisher,* 9 *Serg. & Rawle,* 288; *Angel on Lim.* 221; *Amer. Jurist, No.* 14, *p.* 374.

But in commercial parlance, " parts beyond seas" is synonymous with *foreign countries. Abbot on Shipping,* 414, 416, 451. And in this sense is the phrase in the statute to be understood.

Again, that this construction is correct, is evident from the fact that the penalty attaches, by the very terms of the section on which this action is founded, only to the master of an *outward bound* vessel, which description only applies to foreign voyages, as understood at the Custom House. And in the 1*st vol.* of *U. S. Laws, ch.* 29, *sec.* 8, *" bound without the limits of these United States,"* and *" outward bound,"* are used as convertible terms.

3. It is a constituent and indispensable part of the offence, that the transporting be without the consent of the minor's *parents, master,* or *guardian.* In this case, the minor's father was dead, and his mother again married, and he had no master or guardian. He was therefore his own master, and under only his own control. No one had any right to his earnings, or was bound by law for his support. *Freto* v. *Brown,* 4 *Mass.* 675; *Commonwealth* v. *Hamilton,* 6 *Mass.* 273. And that the law contemplated only that person who was legally in *loco parentis,* appears from the latter clause of the section, which in addition to the penalty, gives to the parent a special action of the case, for the damages he has sustained.

4. Against the motion for leave to amend, he cited *Hamilton* v. *Boiden,* 1 *Mass.* 50 ; *Davis* v. *Saunders,* 7 *Mass.* 62 ; *Dawes* .v. *Gooch, 8 Mass.* 488 ; *Haynes* v. *Morgan, 3 Mass.* 208.

The opinion of the Court was delivered by

MELLEN C. J. — This action is founded on the second section of the statute of 1821, *ch.* 22, which is in these words : That every master or commander of any *outward bound* ship or vessel, that shall hereafter carry or transport *out of this State,* any person under the age of twenty-one years, or any apprentice or any indented servant to *any parts beyond sea,* without the consent of his parents, master or guardian, shall forfeit and pay the sum of two hundred dollars." The *first* section makes it penal " to carry *any* subject of this State, or other person lawfully residing and inhabiting therein, to any port or place *without the limits of the same,* by land or water, without his consent or voluntary agreement." The main question in the cause is, what is the true construction to be given to the words " parts beyond sea," as used in the second section above quoted ? In our statute of limitations, *ch.* 62, there is this provision in the 9th section, *viz :* " that this act shall not be understood to bar any infant, feme covert, person imprisoned or *beyond sea,* without any of the United States, *non compos,* &c. &c." So in *ch.* 10, *sect.* 2, there is this provision, " this act shall not extend to any person whose husband or wife shall be continually remaining *beyond sea,* by the space of seven years together, &c. &c. — In the case of *Farr* v. *Roberdeau's executors,* 3 *Cranch,* 174, *Marshall C. J.,* when commenting on the statute of limitations of *Georgia,* where the same expression is used in the saving clause, as in our statute, says, " *Beyond seas* and *out of the State* are analogous expressions, and must have the same construction." In *Murray* v. *Baker,* 3 *Wheat.* 541, the only question presented was, whether the plaintiff, who resided in *Virginia,* came within the exception in the act in favor of persons " beyond seas." The Court were unanimously of opinion that to give a sensible construction to the words, they must be held to be equivalent to " without the limits of the State." Should we be called upon to give a construction to the above words in our statute of limitations, we should pro-

bably adopt the same construction; not only on account of the high authority of the above decisions, but because the words were borrowed from an English statute, which was perfectly intelligible in *England,* and where it has a local and geographical aptitude, but from the necessity of the case, has been subjected, in its construction here to certain modifications to accommodate it to circumstances. But we must proceed further and inquire the meaning of the expression, *as used* in the act, on the second section of which this action is founded, and *in connection* with certain *other* expressions to be found in the same sentence, in the description of the offence. And here it is proper to advert to the familiar principle, that *some* parts of a statute may throw light upon *others,* and furnish aids in their construction. Another familiar principle also should not be disregarded, namely, that penal statutes are not to be extended by construction, so as to embrace cases which are not, by plain language, included within their provisions. We now proceed to consider the language of the first and second sections of the act in question. The *first* declares it to be an offence to carry *any inhabitant* of the State *out of the limits of it,* without *his* consent, either by land or water. The offence described in the *second* section, consists of *two acts.* The *one* is, the act of a master or commander of an *outward bound* ship or vessel, in carrying or transporting a minor, apprentice or indented servant, without the consent of the person entitled to his obedience and service, *out of the State;* and the *other* is, in carrying him to some parts *beyond sea:* unless *both* acts have been done by the defendant, he has not incurred the penalties of the act. Now, according to the decisions of the Supreme Court before mentioned, an *adjoining State* is to be considered as a *part beyond sea,* for the purposes of the saving clause in the statute of limitations; but if such a principle was in contemplation of the legislature in enacting the law in question, why was there such difference of phraseology between the *first* and *second* sections? Why was a transportation to *parts beyond sea* made a *constituent part* of the offence, if it was complete by a transportation of the minor, apprentice or servant, *merely out of the State?* Is it not evident that something more was intended? Why was the expression *" outward bound* ship or vessel," employed, unless a *foreign*

voyage was meant? Are not all vessels, when *going to sea,* in one sense to be considered as *outward bound?* But is this the *mercantile* sense of the expression? Is a vessel bound from *Frankfort* to *Boston,* to be considered as an *outward bound* vessel? The section on which the action is founded, is a transcript, *mutatis mutandis,* of the provincial act of 1718; in the preamble to which it is stated, that complaints were made that minors, apprentices and servants, were in the habit of going on board of *outward bound vessels,* and were " there entertained by the master and mariners, and actually transported to some parts *beyond the seas."* Could this simple language of that early day have intended any thing less than a transportation to some *foreign port or place?* If it be said that on this construction of the section in question, masters of vessels may, with impunity, carry minors, apprentices, and servants to the most distant ports in the *United States;* the answer is, that is a subject of legislative consideration; and if a prohibition against transporting minors, apprentices, and servants, from *this* State to any *other* State in the Union, should be deemed necessary or advisable, it is the province of the Legislature to extend the prohibition so as to effect the object. The preamble above mentioned plainly shews, that the act then passed was not a re-enactment of any British statute, but was occasioned by the peculiar circumstances above stated. These facts shew that the expression, " to some parts beyond the seas," was really descriptive of those evils which the statute was enacted to prevent. We are thus lead to the conclusion, that the facts stated in the declaration do not constitute a legal ground of action, and that therefore the nonsuit was properly ordered.

The remaining question is whether the plaintiff ought to have leave to amend the declaration in the manner proposed. It is true, that the decision of the Judge upon the motion to amend, is not properly a subject of revision as *a matter of law,* but of *judicial discretion;* still, as it was specially reserved by him, for further consideration, we have considered it. It appears from the report, that the plaintiff married the mother of the minor, who sued the defendant for, and recovered his wages, by the present plaintiff as his *prochein amie*; by which proceeding, the plaintiff did all in his power to ratify the act of the defendant, and con-

sider it as the basis of a contract on his part. Upon a question of *discretion*, we cannot but consider this as furnishing some reason for denying the motion : and when it appears that by granting the motion, we should subject the defendant to liabilities to which he is not now liable, and cannot be rendered so in a *new* action ; and this too being a *qui tam* action, we, on the whole, are not disposed to grant the motion. We approve the ruling and decision of the Judge, and confirm the nonsuit. We have not thought it necessary to examine the other grounds of defence, which have been very ably urged by the counsel for the defendant, much less to express any opinion in relation to them ; preferring to place our decision on the peculiar language of the statute and what we consider must have been the intention of the Legislature, in its enactment.

*Nonsuit confirmed.*