# In the matter of the appeals of William T. Powers and others.

*Opening streets : Special proceedings : Statute must be followed strictly.* Proceedings whereby private property is taken against the will of the owner, for the purpose of opening a street, being special and adverse, must comply strictly with every provision of the law which is not so purely formal as in no way to bear upon the protection or rights of the parties to be affected.

*Taking private property : Apportioning public burdens : Assessments.* And since by the same course of proceedings the value of the land is determined, and the cost of the improvement is levied against the parties to be charged, the inquiry involves not only those principles governing the taking of private property for public use, but also those bearing on assessments to apportion public burdens.

*Charter of Grand Rapids : Opening streets : Setting aside report of jury : New jury : Defects in original proceedings.* The charter of Grand Rapids provides that in proceedings to open streets, the setting aside of the report of a jury by order of the court, shall not make it necessary to begin back anew, and allows a new jury to be called on application, without any new notice, either of such application or of the original resolution of the common council; and it follows, therefore, that the consequences of any legal error before the appointment of the first jury attaches to and affects all subsequent steps in the proceeding.

*Opening streets : Recorder's court of Grand Rapids : Jurisdiction : Notice : Proof of service.* Under the course of procedure marked out by the charter of Grand Rapids for opening streets, the recorder's court gets no jurisdiction to act in the absence of legal proof of legal notice to the parties entitled to be heard.

*Personal notice : Advertised notice.* The personal notice, which is required to be served by the marshal, is distinct from the advertised notice, required to be given by the common council, and not by the marshal.

*Advertised notice : Choice of papers : Common council.* The choice of the daily papers in which the resolution is to be published must be made by those who are appointed to give that notice, viz.: the common council.

*Common council : Written resolution.* A common council can act only by written resolution.

*Notice : Service : Time : Return.* The return of the marshal being required to be made at least six days before the day appointed for the hearing, no notice which is required to be included in such return will be valid if made later than six clear days before the day of hearing.

*Opening streets : Necessity of the improvement : Jury : Common council : Petitioners.* In proceedings of this nature the fact of the public necessity of the proposed improvement must be found, and not simply the fact that the particular land is necessary to the carrying out of the proposed improvement; and under our constitution the determination of this necessity must be made by the jury; the action of the common council, in passing upon the policy of opening a street over private property which they cannot obtain without adverse proceedings, is not judicial action, or final; but they stand rather in the position of mere petitioners, and the decision rests with the jury, and not with the city.

POWERS' APPEAL.

*Constitutional law : Legislative power : Opening streets : Public necessity : Jury : Oath : Due process of law.* Under a constitutional provision so impera-tive as ours no legislation can be maintained which does not plainly require this question to be left to the jury; their finding, without such requirement, is extrajudicial and not within their oaths, the oath being the measure and limit of their legal action ; and property taken under legislation which does not provide expressly for every constitutional safeguard framed to govern such action, cannot be said to be taken by due process of law.

*Opening streets : Necessity of the improvement : Statutory requirement.* A doubt is suggested, whether the provision in the legislation in question in this case, simply leaving it to the jury to determine " the necessity for using the prop-erty intended to be taken for such improvement," does not most naturally con-vey the idea that they are not to pass upon the necesssity of the improvement itself, and especially in view of the fact that the oath prescribed is not specific, but merely swears the jury generally to " discharge the duties imposed on them by this title," and is not in any way calculated to help them in ascertaining their duties: CHRISTIANCY, J., however, holding that the statute, being as clear and express in its requirement in this regard as the constitutional provi-sion itself, is not open to any imputation of ambiguity in that respect.

*Special tax : Designating tax district.* Where the tax is not general, the proper, if not the necessary course, is to define the taxing district in advance; but where, as in this case, such a course could not be resorted to in harmony with the general purposes of the statute, without placing the assessment of damages and of benefits in different hands, to be managed separately, it would not be practicable to adopt it.

*Charter construed : Resident freeholders : Disinterested jury.* Where a charter provides, in case of proceedings to open streets, that the excess, if any, of dam-ages over the benefits, shall be laid on the whole city, and requires the jury to be freeholders resident within the city, the jury cannot be declared legally disinterested, as each freeholder has a direct interest in having the assessment so laid as not to fall on the city at large, since he thereby avoids charging his own land.

*Heard May 8.    Decided July 14.*

Appeal from Recorder's Court of Grand Rapids.

Four separate appeals of different parties were heard upon one argument.

*Champlin, Butterfield & Fitzgerald* and *Norris, Blair & Kingsley,* for the appellants.

*J. W. Ransom,* for the city of Grand Rapids.

CAMPBELL, J.

Proceedings were taken to continue Kent street, in the city of Grand Rapids, through certain private property, and to assess the cost of the same upon property benefited by

29 MICH.—64.

the alleged improvement. After one jury had reported, the report was set aside, and a further jury was summoned, upon whose final action, as affirmed by the recorder's court, the present appeals are brought, involving questions of regularity and of jurisdiction. The steps complained of were taken under title six of the amended charter of Grand Rapids, as revised in 1871.—*Laws of 1871, Vol. 2, p. 383, et seq.*

The course to be taken is quite minutely set forth, and, inasmuch as the proceedings are special and adverse, whereby private property is taken against the will of the owner, the settled principles of law require strict compliance with every provision which is not so purely formal as in no way to bear upon the protection or rights of the parties to be affected. And, inasmuch as by the same course of proceedings, the value of the land is determined, and the cost of the improvement is levied against the parties to be charged, the inquiry involves not only those principles governing the assumption of private property for public use, but also those bearing on assessments to apportion public burdens on the persons or property liable to pay them. The questions are more complex, and the difficulties are multiplied by this condition of things.

When an application has been made in due form of law to the recorder's court, and legal notice has been given to the persons entitled to be heard, the order of the court, setting aside the report of a jury, does not under the language of the charter make it necessary to begin over again from the beginning, but allows an application for a new jury, and declares that "it shall not be necessary, on such or any subsequent application, to give notice thereof, or of the original resolution upon which the first application was based."

It follows, of course, that the consequences of any legal error before the appointment of the first jury, must attach to and affect all subsequent steps in the proceeding.

It will be necessary, therefore, to state briefly the steps to be taken in the beginning. These are:

*First.* A resolution of the common council declaring the necessity of the improvement, and describing that and the property to be taken, and declaring that they will, on a day named, apply to the recorder's court for a jury "to ascertain the necessity for using the property intended to be taken, if it be intended to take any, for such improvement, to ascertain the just damages which any person may be entitled to if such intended improvement be made, and to apportion and assess such damages and compensation to and upon all lots, premises and subdivisions thereof which will be benefited by such improvement."—*Sec. 2.*

*Second.* Notice of such application by causing a certified copy "to be published for four successive weeks in some daily newspaper published in said city."

*Third.* Notice to be served on each owner by the marshal, personally or at his residence, if in the city, or, if not, then on the occupants if known and residents, and if unknown, then by posting on the premises. The marshal is required to "make return of his doings, and of the manner of giving said notice, as soon as practicable" after the passage of the resolutions, "*which return shall be made to the recorder's court at least six days before the day appointed in said resolution for the hearing of said application.*" —*Sec. 3.*

*Fourth.* On that day, or subsequently, on filing an affidavit of the publication of the resolution, the marshal is to "attend said court and write down the names of twenty-four disinterested freeholders residing in said city, and who shall be approved by the court as such disinterested freeholders and residents and qualified to serve."

*Fifth.* The court issues to the marshal a summons for the jurors to appear at a time not less than seven days thereafter, and the marshal is to serve it "*at least three days before the return day thereof,*" and make return as on a *venire.*

*Sixth.* Provision is made for drawing from that number, and for talesmen when necessary. They are to be "sworn to discharge the duties imposed on, them by this title, faithfully, impartially, and according to the best of their abilities." The court instructs them, and they then proceed in their work.

These are the chief outlines of the procedure. The statute directs the supreme court to dispose of these appeals with the least ·practicable delay; and inasmuch as there may be errors which vitiate the entire proceedings, and others which could be rectified by a new inquest, it becomes necessary to dispose of substantial and jurisdictional questions, and not to confine our attention entirely to those of less consequence.

As the right to assess the cost of the improvement depends directly on the legality of the steps to condemn the land, all questions relating to that belong to each of the appeals. And the first question naturally presented refers to the jurisdiction of the recorder's court. This cannot attach without legal proof of legal notice to the parties entitled to be heard.

The statute is positive that the marshal shall "make return of his doings, and of the manner of giving said notice, as soon as practicable after the passage thereof" [that is, of the resolution], "which return shall be made to the recorder's court, at least six days before the day appointed in said resolution for the hearing of said application." A distinction is also taken between the personal notice, which is to be given by the marshal, and the advertised notice, which is to be given by the common council, and not by the marshal.—*Sec. 3.* This distinction becomes important under the objections presented on the record.

The choice of the daily paper in which the resolution is to be published must necessarily be made by those who are appointed to give that notice. It is always a matter of importance to select a paper which will be adapted to give the widest currency to such a notice, which concerns

the whole city, inasmuch as the city may become liable to pay at least a part of the damages.—*Sec. 12.* There is only one way in which a common council can act, and that is by written resolution. We think the paper should have been designated; and if it had been, the minor question whether it sufficiently appeared the paper in which the notice was printed was within the statute, could not very well have arisen. The printed notice was not authorized, and was invalid.

We think, also, that as the return is required to be made by the marshal *at least six days before the day appointed for hearing,* the law precludes the right to give any notice which should be included in his return, unless it be given before that time. There are no circumstances which could authorize a notice later than six clear days before the day of hearing. Such language is imperative, and the service is necessary to give jurisdiction.—*Sallee v. Ireland, 9 Mich. R., 154.*

The marshal returns that a part of the premises being unoccupied, and the owner a non-resident, he posted a notice on that lot upon the 10th day of October, which was less than six days before the 14th (the day of hearing), and this notice was therefore void.

The recorder's court got no jurisdiction, and all the proceedings therein were void from the beginning.

But there were some other more vital questions raised, which we feel bound to notice, under the statute, as they stand directly in the way of any further proceeding under the amended charter, if they are well taken.

It is claimed that the charter is framed so ambiguously that the jury are not required to determine upon the necessity of the proposed improvement, but only on the necessity of taking the land for the improvement, provided the improvement is made as designated. It was held in *People ex rel. Bingham v. Village of Brighton, 20 Mich. R., 57,* that the jury is not called upon merely to determine whether a particular piece of land is necessary to an im-

provement already designated by some one else, for that would be an idle ceremony, and the fact could be determined by measurement, and involve no important discretion. The object of the constitutional provision is to prevent the taking of private property for any purpose which is not shown to the satisfaction of a jury to be demanded by public convenience, or, to speak more accurately, by necessity.

The determination of this necessity has sometimes been allowed to be made by legislative or other public agencies. But our constitution has taken away this power from all bodies except those indicated; and in cases like the present, the fact of necessity must be found by the jury. The common council, instead of acting judicially or finally on the policy of opening a street over private property which they cannot obtain without adverse proceedings, become no more than petitioners, and the decision rests with the jury, and not with the city.—*Same case.*

Where the constitution is so imperative, no legislation can be maintained which does not plainly require this question to be left to the jury. Their finding, without such a requirement, is not within their oaths, and is extrajudicial. The oath is the measure and limit of their legal action.— See *McClary v. Hartwell, 25 Mich. R., 139.* And it is impossible to say that property has been taken by due process of law, unless the statutes provide expressly for every constitutional safeguard framed to govern such action. Cases have frequently arisen where the verdicts of juries have shown that they have had no such rule before them.—See *Mansfield, Coldwater & Lake Mich. R. R. Co. v. Clark, 23 Mich. R., 519; Grand Rapids, Newaygo & Lake Shore R. R. Co. v. Van Driele, 24 Mich. R., 409.*

There is very serious doubt whether the repeated provisions leaving it to the jury to determine " the necessity for using the property intended to be taken for such improvement," do not most naturally convey the idea that they are not to pass upon the necessity of the improvement itself. Their oath is not specific, but merely swears them

generally, to "discharge the duties imposed on them by this title," and is not in any way calculated to help them in ascertaining their duties. As there is another defect which will require the statute to be amended, we content ourselves with pointing out the peculiar character of these provisions, that they may at the same time receive proper attention.

It is lastly objected that the statute is void as not providing for a lawful assessment of damages.

The jury is required by *section 5* to be obtained by summoning twenty-four disinterested freeholders residing in the city. The damages are to be apportioned upon property benefited, and, if no property is benefited to the full amount, the remainder is to be a city charge, assessed on all property, like other taxes.

The law before us does not contemplate or authorize a separate district to be defined in advance, for purposes of assessment. This is the proper, if not the necessary course where the tax is not general, but it could not be resorted to, in harmony with the general purposes of this charter, without placing the assessment of damages and benefits in different hands to be managed separately. The one may not equal the other, and the difference, if any, must be charged to some other than the property specially benefited; and here it is laid on the whole city.—See *Hoyt v. East Saginaw, 19 Mich. R., 39, and cases cited ; People v. Salem, 20 Mich. R., 452.* The charter does not proceed on the usual theory of special assessments.

As there is no limitation of districts, and the jurors are only required to be freeholders resident within the city, it is impossible to determine, in advance of their verdict, whether they have been disinterested or not. They cannot fail to have a direct interest in so charging the benefits as to avoid reaching their own freeholds, or the freeholds of their relatives, within the degrees which would affect their competency as jurymen. They have a direct interest in finding that there is specific property benefited to the full extent of the cost of the improvement; for, if not, they will

all be subject to direct taxation to raise the balance.   It is absolutely impossible, under this charter, to find a freeholder who can be declared legally disinterested for the performance of these duties.

The statute, therefore, furnishes no means for determining the matters which it purports to refer to a disinterested jury; and the proceedings are entirely void throughout, and are not capable of amendment by any future action.   Until the charter is changed, the improvement cannot lawfully be made.

Judgment must be entered on each appeal, for quashing the entire proceedings, with costs.

COOLEY, J., and GRAVES, CH. J., concurred.

CHRISTIANCY, J.

I concur with my brother Campbell in holding that the recorder's court got no jurisdiction of the proceedings in this case.   I concur also in holding, as we have on many previous occasions held, that by the constitution the jury must determine, not merely that if a certain street is to be made in a certain locality, it will be necessary to take the particular property for it, but they must determine whether the proposed street is necessary for the public use.   And as the oath which under this charter the jury are to take, is merely " to discharge the duties imposed on them by this title " (title VI. of charter) "faithfully and impartially, and according to the best of their abilities," such a requirement must be found in the title of the charter referred to, or the oath would not comply with the constitutional requirement, and the finding or verdict would not be valid, though it did affirmatively find, as in the present cases, that the street was necessary.   But, as I read the provisions of the title of the charter in question, they do just as clearly require the jury to pass upon the necessity of the street or other public improvement, for which private property is by the council proposed to be taken, as the constitution itself does.

*Section 9* provides for swearing the jury in the mode already stated, and requires the court to instruct them as to their duties. *Section 10* requires them to view the premises. By *section 11* "said jury shall then ascertain the necessity for using the property intended to be taken, if it be intended to take any, for such improvements" (the just damages, etc.) And similar language is used in the *2d section*, in reference to the resolution for calling a jury, and the purpose for which it is to be called.

But it is said that this language does not expressly require the jury to ascertain or determine the necessity of the street or improvement, and may have full effect without imposing any such duty, and cannot be fairly held to require this of the jury, without going beyond the plain, natural meaning of the words. The words, however, are the same as those used in the constitutional provision, which we have uniformly held to require the finding in question; and we have uniformly held, before as well as since the passage of this charter, that these words in the constitution did require the jury to determine the necessity of the street or improvement. The language of the constitution is no more clear and express than the provision of this act; but we found no difficulty in saying it required the finding in question; because, without this, the provision would be idle and senseless: would not the law be equally so? By what rule of law or logic are we to hold, when the legislature, in speaking of the same subject matter, and in the same language as the constitution, have meant something different from the constitutional meaning? Is it because the legislature did not go on and explain what the constitution and this court has taken it for granted needed no explanation to express the meaning? And after we had judicially said to the legislature what was the fair meaning of the language used in the constitution, and they have adopted the same language applicable to the same subject, supposing its meaning to be thus settled, may they not justly conclude that the difficulty of framing an act which

29 MICH.—65.

this court will uphold as constitutional, is inexplicable, as well as insuperable?

For myself I must hold it to be a safe and sound rule of interpretation, that, even when a statute is susceptible of two different meanings, one of which is in harmony, and the other in conflict with the constitution, the legislature shall be presumed to have intended to use the language in a constitutional sense, rather than in that which would violate it. When an act of the legislature is charged with violating the constitution, it is entitled at least to the same presumption of innocence, as an individual on trial for a crime.

The only plausible reason assigned for the inference that the legislature did not use the language in the constitutional sense, is, that the council are by the charter (*Sec. 2, Art. VI.*) required, as the very initiation of the proceedings for taking private property for a street or other public improvement, to declare by resolution their intention of taking it, and to describe the property intended to be taken, and that they will, on a day named in the resolution, "apply to the recorder's court for the drawing of a jury to ascertain the necessity for using the property intended to be taken, if it be intended to take any, for such improvement."

It is urged that the passing of this resolution must be understood as the final determination to take the property, and of the necessity of taking it, and would naturally be understood as dispensing with any finding of the jury upon the point. I do not so understand it; and to interpret it in this way seems to me to be just as absurd, and for precisely the same reason, as to determine such to be the meaning of the constitutional provision, viz: it would render the provision, requiring the jury to ascertain the necessity of the taking, senseless, without a purpose, and simply absurd.

I look upon the provision requiring the passage of this resolution as merely an initiatory step, to set proceedings

in motion, as in effect intended as a mere proposition, in a properly authenticated form, to take the land for the purpose indicated. And, as such proceedings ought not to be instituted, and parties put to the expense of protecting or looking to their rights, unless the council first by a vote indicate their wish to this effect, the resolution is a very proper mode of indicating the corporate will for taking such proceedings. It is, in fact, an additional safeguard to individual rights; since it requires the vote of a majority of the council before such proceedings can even be attempted. And I confess my utter inability to discover any plausible ground for the opposite view. But if the language in the abstract would be barely susceptible of the meaning which would render it unconstitutional, this would be no justification for holding the law unconstitutional, if, when considered with reference to the subject matter, and any reasonable object of inserting the provision, a constitutional intent can be inferred. Any less liberal rule of construction would invalidate a very large portion of our statutes, and convert the courts into mere schools of verbal criticism.

I cannot in this case concur in holding that the constitutional validity of the provision in question is at all doubtful. Upon every other point I concur with my brother Campbell.