MATTER OF OPENING FIRST STREET, IN GRAND RAPIDS.
[GRAND RAPIDS v. THE GRAND RAPIDS & INDIANA
RAILROAD COMPANY.]

[See 58 Mich. 641.]

*Municipal corporations—Condemnation proceedings for opening
street—Oath to jury—Compensation to railroad company—
Contract restricting right of eminent domain.*

1. In a street-opening case under Act No. 124, Laws of 1883, it is the
duty of the court to instruct the jury as to their duties and the
law of the case, and the oath provided for by section 7, requiring
them "to faithfully and impartially discharge all such *other*
duties as devolve upon them in the case," sufficiently includes
a determination by them of the *necessity* of *making* the proposed
improvement.

2. On the former trial of this case witnesses were allowed, against
objection, in answer to the question "what amount of compen-
sation ought to be paid to the appellant," to fix the same at a
*given* sum, and the jury were instructed that in fixing such com-
pensation they must be governed by the *evidence*, and not by
their own arbitrary opinions, as to what should be awarded. In
setting aside the verdict the Court held such testimony clearly
incompetent, the amount of such compensation being the very
thing which the Constitution refers to the jury, who must make
up their *own* conclusions from proper *data.* [See 58 Mich. 643,
647.] On the second trial the same witnesses were asked for
their *judgment* as to the *value* of the land taken, and the *damage*
to the remainder by such taking, and in the case of the appell-
ant such last damage was confined to the estimated expense of
fixing up the approaches to the railroad, and putting the street
or crossing in good condition; and the Court held that the
appellant's case was not prejudiced by such answers.

3. The laying out and opening of streets by the common council of
a city is the exercise of its *legislative* functions, and any con-
tract made by the city with an individual or corporation, by
which it agrees that it will not in the future open or extend a
street in any particular place or part of the city, is an abnegation
of its legislative powers, unauthorized by its charter, and may
be alike destructive of the convenience and prosperity of the
municipality, and is void.

4. The property of a corporation like that of a railroad company, like other property, is held subject to the necessities of the public, and together with its franchise, when inseparable, may be taken for public use whenever the necessities of the public require it, compensation being made therefor.

5. All contracts are subject to the power of eminent domain, wherever the public necessity requires its exercise, and must be regarded as made with reference thereto.

6. The *compensation* to be made to a railroad company for crossing its right of way for *street* purposes not only includes the *use* of the land occupied by the street for such crossing, but any extra expense created by the use of the right of way for the street, in the ordinary use of the company's road, and such other damage as it may sustain for injury to its track, right of way, and franchise. occasioned by the crossing, and which may be properly considered as the natural, necessary, and approximate cause thereof. This rule will not include expenses made necessary in order to comply with the *police* regulations of the State or municipality, but such damages only as arise in making the structural changes necessary to comply with statutory regulations, and which must necessarily continue in the future operation of the defendant's road.

Appeal from superior court of Grand Rapids. (Parrish, J.) Argued February 10, 1887. Decided May 5, 1887.

Appeal from order confirming a verdict in a street-opening case. Verdict set aside, and case remanded for a new trial. The facts are stated in the opinion.

*T. J. O'Brien* and *J. H. Campbell,* for appellant.

*J. W. Ransom,* for petitioner.

SHERWOOD, J. The petition in this case was filed in behalf of the city on the tenth day of November, 1884, in the superior court of Grand Rapids. It sets forth certain resolutions which had been adopted by the common council, stating that it was made and filed for the purpose of commencing proceedings under Act 124, Laws of 1883, to take and condemn private property for the purpose of opening First street, in said city; that the property proposed to be

taken is on 16 different lots, giving the descriptions thereof:

"Sixth parcel. Part of lot 4, section 24, town 7 north, range 12 west, described as follows: Commencing at the intersection of the west line of lot 4 of said section 24 with the north line of First street produced westerly; thence east, on said line of First street produced, 33 feet; thence south, parallel with the west line of said lot 4, 66 feet, to the south line of First street produced; thence west 33 feet; thence north 66 feet to the place of beginning,—containing 2,178 square feet, more of less."

The Grand Rapids & Indiana Railroad Company is the owner of this parcel. The petition stated the names of the other owners as respondents, and the other usual statements in such cases, and prayed that a jury might be summoned to determine the necessity for taking the property for the use or benefit of the public, which the petition described, and the just compensation to be made therefor.

The case was before this Court at the January term, 1886, on appeal from an order confirming the verdict upon the first trial. The verdict was set aside, and the case sent back for a new trial. See 58 Mich. 641. Upon the new trial, a verdict was again obtained for the city, and confirmed by the court, and the defendant company appeals to this Court. The constitutional questions were substantially disposed of in the decision rendered in the former case.

Four points are now urged by counsel for the defendant against the order made by the judge of the superior court confirming the verdict of the jury.

It is claimed, first, that the oath administered to the jury was not such as is required by the statute.[1] The oath is given in form and substance, and will be found in Act No. 124, Laws of 1883, § 7, reading as follows:

---

[1] The objection was that the oath administered did not set forth to its full extent the duty which the jury had to perform, in that it did not specify the determination by them of the necessity of making the proposed improvement as a whole, as well as taking the particular parcels for such improvement.

"You do solemnly swear or affirm that you will well and truly ascertain and determine whether there is necessity for taking, for the use or benefit of the public, the private property which the petition describes and prays may be taken; and, if you shall detemine that it is necessary to take said property, that then you ascertain, determine, and award the just compensation to be made therefor, and faithfully and impartially discharge all such other duties as devolve upon you in this case, and, unless discharged by the court, a true verdict give, according to law and the evidence, so help you God, or under the pains and penalties of perjury."

The following was the oath administered:

"Each and all of you do solemnly swear that you will well and truly ascertain and determine whether there is a necessity for taking, for the use or benefit of the public, the private property which the petition describes and prays may be taken; and, if you shall determine that it is necessary to take said property, that then you will ascertain, determine, and award the just compensation to be made therefor, and faithfully and impartially discharge all such other duties as devolve upon you in the case, and, unless discharged by the court, a true verdict give, according to law and the evidence, so help you God."

In these cases under this statute, it is the duty of the court to instruct the jury as to their duties and the law of the case, and their oath requires the jury to faithfully and impartially discharge all the duties enjoined upon them. This I think sufficiently includes the necessity for the improvement; and the verdict finds that there is a public necessity for the improvement. The charge clearly shows that the judge of the superior court not only understood the requirements of the law and Constitution upon the subject, but fully instructed the jury upon the same. In the first paragraph of his charge he says to them:

"There are three principal questions for you to determine:
"1.   The public necessity for opening, widening, and extending the street.
"2.   The necessity for taking the property described in the petition for the proposed improvement.

"3. Just compensation to be paid for such private property."

Certainly the defendant had the benefit in the rulings of the court and action of the jury to the extent its counsel claims the Constitution gives it. I do not think *Powers' Appeal*, 29 Mich. 504, nor *Bowler v. Perrin*, 47 Id. 155, apply to this case in the manner urged by counsel for defendant. I agree with Chief Justice CAMPBELL in his conclusion, when the case was presented before, that,—

"When we take the whole statute together, it evidently means such a finding as the Constitution warrants."

The second point relied upon by the defense is that witnesses for the city were permitted—

"To state the amount of the damage to the appellant by reason of the opening of the street."

The testimony of these same witnesses upon the compensation to be made to the defendant on account of opening the street was objected to by counsel for appellant, and its admission was one of the points made for reversal, in this case before, and the exception was sustained. The questions then propounded to the witnesses were very similar to those in the present case, and, were it not for the explanation given in the answers made by the witnesses in the present case, would fall under the same condemnation, but, with the explanations given and facts stated by them, I do not think the appellant's case was prejudiced by the answers made.[1]

The defendant's third point relates to the rulings and instructions of the court as to the effect of the contract claimed to exist between the city and the railroad company, wherein the circuit judge held the same to be invalid.

---

[1] The witnesses gave their judgment as to the value of the land taken, and the damage resulting, if any, to the part not taken, as regarded the several parcels, and, in the case of the railroad company, the value of the land taken, and the damage consequent thereon, namely, fixing up the approaches, and putting the street or crossing in good condition.

First street extended west, as desired in the petition, across the defendant's right of way, intersects Seward street, which runs north and south. The contract relied upon by defendant consists of certain action taken by the common council at the instance of citizens owning property abutting on Seward street, and which is stated in the record as follows:

"We, the undersigned, being respectively the owners of premises and lots located at some point along the west side of and adjoining Seward street, in the city of Grand Rapids, in the county of Kent and State of Michigan, between Bridge street and the northern terminus of said Seward street, do hereby consent that the common council of the city of Grand Rapids, in the county of Kent, aforesaid, may vacate and abolish the east half of said Seward street, from Bridge street aforesaid to its northern terminus; or, if they shall deem it best, may authorize and allow the Grand Rapids & Indiana Railroad Company to occupy the said east half of said street for railroad purposes.

"And we, and each of us, do hereby authorize and request the common council aforesaid to take such immediate action as may be legal and necessary for the purpose of so vacating the same, or authorizing and allowing the same to be used for railroad purposes.

"And we, and each of us, do hereby waive any and all notice of such proceeding, and all compensation in damages which may arise from vacating said street, or using the same for railroad purposes ; it being understood by us, and each of us, that the object of vacating said street is for the purpose of giving to and providing for the Grand Rapids & Indiana Railroad Company the right to use the land occupied by the east half of said street for railroad purposes.

"And this consent and release is made upon the consideration and understanding that the said railroad company shall, on or before the first day of January next, erect and thereafter maintain a passenger station on the north side of Bridge street, and at some point on the line of said railroad, between said Bridge street and Second street in said city; and that said railroad company shall, from and after the time when authority shall be given them to use the east half of said street for railroad purposes, or from and after the time that such east half of said street shall be vacated, maintain a passenger station at the place aforesaid.

"*Dated Grand Rapids, July 10, 1873.*"

"Common council, regular session, July 26, 1873. Present, Ald. Baldwin, Bryan, Dishman, French, Grady, Kendall, Leitelt, Milmine, Powers, Quimby, Smith, Steketee, Verdier, Woodcock, and Weirich.

"*Resolutions and Motions.*    By Alderman    Milmine: Resolved, that the city attorney be, and is hereby, instructed to suspend all proceedings in the matter of the vacation of Seward street by the Grand Rapids & Indiana railroad, and that a committee of four be appointed by the mayor to negotiate with the officers of said railroad as to terms relative to a depot building, and other matters pertaining to said vacation. Adopted.   Committee: Aldermen Milmine, Powers, Dishman, and Weirich."

"AUGUST 2, 1873.      *      *      *      Alderman Milmine, from the committee appointed to confer with the Grand Rapids & Indiana Railroad Company relative to the occupancy of a portion of Seward street by said company, reported that they had had a conference with the officers of said company, and reported and recommended the adoption of the following preambles and resolutions:

"Whereas, a committee has been appointed to negotiate with the Grand Rapids & Indiana Railroad Company for the purpose of settling the terms and conditions upon which said corporation should be permitted to use the east half of Seward street, in the city of Grand Rapids, from Bridge street to the northern termination of said Seward street, for the purpose of constructing, maintaining, and operating a railroad thereon; and whereas, said committee have reported that they have held an interview with the representatives of said corporation, and that said corporation is willing to maintain a passenger station on the north side of Bridge street, in said city, and at some point between Bridge street and First street, and upon the understanding that said First street shall not be continued across the line of said railroad.

"It is therefore hereby resolved that the said Grand Rapids & Indiana Railroad Company be, and is hereby, authorized, permitted, and empowered to use and occupy the east half of Seward street, from Bridge street 105 feet north of Third street, for the purpose of constructing, operating, and maintaining its railroad thereon upon the terms and conditions that said corporation, from and after the passage of this resolution, shall construct and maintain a passenger station on the line of its road between Bridge and First street, aforesaid, for all local and accommodation trains on said road.

"And be it further resolved, that the said Grand Rapids & Indiana Railroad Company be, and is hereby, permitted, empowered, and authorized to maintain its railroad tracks across said Bridge street, in said city, as they are now laid and constructed, upon the terms and condition that the planking upon said crossing shall be kept in good state of repair, so as to inflict as little inconvenience upon persons traveling upon said street as may be. Provided, however, that the city of Grand Rapids shall have the right to construct a sewer across the property of the said railroad company at First street.

" On motion, the preambles and resolutions were adopted by the following vote: Yeas, Aldermen Bryan, Dishman, French, Grady, Kendall, Leitelt, Little, Milmine, Powers, Quimby, Smith, Steketee, Verdier, Woodcock, and Weirich, 15. Noes, 0."

At the close of the trial, counsel for defendant asked the court to give the following instructions to the jury upon this subject:

" 1. The facts which appear in evidence in this case, and are undisputed by evidence, viz., the action of the common council of the city in the appointment of a committee to confer with the officers of the railroad company, the proposition made by the railroad company through the solicitor, relative to the establishment of a depot on the West side, and the report, preamble, and resolution submitted by the committee of the common council to the common council, and adopted by that body, and the erection of the depot by the company, and its use of a street, constitute a contract complete in its terms, between the city of Grand Rapids on the one part, and the Grand Rapids & Indiana Railroad Company on the other part.

"2. By the terms of such agreement, the railroad company agreed to construct and maintain a passenger house on the line of its road between Bridge and First streets, for all local and accommodation trains upon said road, and in consideration thereof it was agreed upon the part of the city:

"a —That the company should have the right to use and occupy the east half of Seward street, frcm Bridge street to a point 185 feet north of Third street, for tae purpose of constructing, operating, and maintaining its railroad thereon.

"b —That First street should not be continued across the line of said railroad.

66 MICH.—4.

"3. It appears by the evidence in the case that the company has complied with the agreement on its part.

"4. It also appears that the railroad company has, at large expense, constructed and maintained a passenger depot at the place named, since the adoption of the resolution by the council, upon the faith of the agreements made on the part of the city, which I have stated.

"5. It also appears that both parties have acquiesced in the agreement and acted under it for nearly thirteen years.

"6. I instruct you that the agreement is binding upon both parties, and that it is a bar to the opening of First street from the center line of Seward street east to Alabama street."

Counsel for respondent thereupon presented and read the following further requests, and the same were taken under consideration by the court:

"The court having refused to give the foregoing six requests, the said respondent requests the court to instruct the jury:

"7. The agreement which I have stated is valid and binding upon the parties, at the least so far as the agreement to build the depot on the one part, and the right to use and occupy Seward street, are concerned.

"8. So far as the use of Seward street is concerned, for the purpose named, the agreement vested the railroad company with valuable rights.

"9. So far as the agreement provides that First street shall not be continued across the line of the said railroad is concerned, it vests the railroad company with valuable rights.

"10. Although (under the ruling of this court) the agreement cannot operate as a bar to the opening of the street, and the appropriation of the land, if the public necessity requires it, just compensation must be made to the railroad company for its interest in the property taken, and for the damages it will sustain. by reason of the opening of the street, and by the depreciation thereby of any rights and any additional expense which will thereby be imposed upon the company.

"11. The compensation which the railroad company is entitled to receive is—

"a—The value of the land described in the petition, whatever you determine it to be.

"*b*—For the interference with use of the premises in connection with its passenger depot, and resulting inconvenience and use of the street at this point, whatever you may find it to be.

"*c*—The cost of building a crossing, which appears to be $21.12.

"*d*—The cost of gates at the crossing, $300.

"*e*—The cost of a tower for gate-keeper, $700.

"*f*—For expense of wages of flag-man to attend the crossing, and fuel and lights,——.

"The undisputed evidence shows that these expenses will, at the lowest figure, be for a flag-man, $40 per month, and fuel, etc., $15 per month,—in all, $55 per month. The company is entitled to an award, as compensation, of such an amount as will, at the legal rate of interest, produce this amount of $55 per month, which is $9,400.

"12. Under the laws of this State, and the charter and ordinances of this city, and the action which has been taken by the common council, the opening of the street in question will impose upon the railroad company the duty and expense of constructing and maintaining a proper crossing across its track upon the highway, and of keeping a flag-man at the crossing. The expense of said crossing, and wages of flag-man, and fuel and light, are elements of the compensation to which the railroad company is entitled, and you must award the company such compensation as will indemnify it for these expenses."

None of these requests were given in the language requested. The court, however, gave a charge, upon his own motion, covering all the legal questions necessarily raised in the case. Upon the point now under discussion, the court said in the charge:

"The Grand Rapids & Indiana Railroad Company claims that it made a contract with the city, or the common council of the city, by which it was agreed, upon a consideration, that the street should not be opened across its tracks. This court holds that such a contract, if made, is not now binding upon the city, so far as this case is concerned. The right of eminent domain, which is the right to take private property for public use, as the necessities of the public demand it in a growing country, is inherent in all governments. It is a right that cannot be bartered away. Neither a legislature of a state or common council of a city, nor one generation, can barter away the right of eminent domain so as to bind its successor, whether in this country or any other country. The exercise

of this right is regarded as essential to the progress of the country, and the advancement of civilization. A public improvement not thought of to-day may be a public necessity to-morrow. The city of Grand Rapids to-day is not the city of Grand Rapids fifteen years ago. And therefore I say to you that the Grand Rapids & Indiana Railroad Company is entitled to no compensation by reason of such contract, if it was ever made.

" Whoever owns property in Grand Rapids holds it subject to the right of eminent domain, whether it is a railroad company or an individual, and when the government seeks to take it for the public use, and on account of a public necessity, all stand upon the same basis, subject to the same right and compensation. The railroad company claims that it will be put to expense in adjusting its track to the proposed changed condition. So will every man on the line be put to expense to adjust his property to the new condition. The railroad company is entitled to no more consideration in this respect than any individual whose rights are thus invaded; no more, no less. Each is entitled to a just compensation at your hands for the property taken and the damages sustained.

" You may dismiss from your minds, as far as practical, the special claim of the railroad company for the prospective expense for building and maintaining gates, towers, and flag-men. These are expenses that may or may not be incurred, and you may award to the company just compensation for property taken, if any, for franchises invaded, and for damages sustained. Your own examination of the premises, and the evidence adduced in the case by the respective parties in interest, afford you the basis and *data* for your investigation."

The requests to charge were all based upon the validity of the contract of defendant with the city. We think the judge of the superior court took the correct view of this subject in the foregoing extract from the charge upon the point under consideration. The laying out and opening streets by the common council of a city is the exercise of its legislative functions, and any contract made by the city with an individual or corporation, by which it agrees that it will not in the future open or extend a street in any particular place or part of the city, is an abnegation of its legislative powers,

unauthorized by its charter, and may be ᵤₐ         ᵒ of
the convenience and prosperity of the munici ᵣ
claimed contract in this case is of this character, anᵤ ‚⸱⸱⸱ ‚
and furnishes no basis for any liability of any kind on the
part of the city to the defendant in this case.  *Gale v. Village
of Kalamazoo*, 23 Mich. 344; *Toledo, etc., Ry. Co. v. Detroit,
L. & N. R. R. Co.*, 62 Id. 564; *Milhau v. Sharp*, 27 N. Y.
611; *Coleman v. Second Avenue R. R. Co.*, 38 Id. 201; *Rich-
mond Co. Gas Light Co. v. Middletown*, 59 Id. 228; *Hood v.
Lynn*, 1 Allen, 103; *Backus v. Lebanon*, 11 N. H. 19; *State
v. Hudson Tunnel R. R. Co.*, 38 N. J. Law, 548; *Newcastle
& R. R. R. Co. v. Peru, etc., R. R. Co.*, 3 Ind. 464; *Brim-
mer v. Boston*, 102 Mass. 19; *Trustees of Belfast Academy
v. Salmond*, 11 Me. 109; *West River Bridge Co. v. Dix*, 6
How. 507.

The powers of a municipal corporation in respect to open-
ing, improving, and controlling its streets are held in trust
for the public benefit, and cannot be surrendered by contract
to private persons, or to a corporation, by resolution of the
common council, or in any other manner.  If this could be
done, there is no reason why the common council of any year
may not, by contract, preclude the city for all future time
from opening, widening, or extending any of its streets, or
laying new streets, no matter how great the public necessity
may be therefor.   Dill. Mun. Corp. § 567; *Davis v. Mayor*,
14 N. Y. 506, 532; *People's R. R. v. Memphis R. R.*, 10
Wall. 38.

The property of a corporation like that of a railroad com-
pany, like all other property, is held subject to the necessities
of the public.  Not only the property, but its franchise, when
inseparable, may be taken for public use whenever the neces-
sities of the public require it, compensation being made
therefor.   *West River Bridge Co. v. Dix*, 6 How. 507; *Crosby
v. Hanover*, 36 N. H. 404; *Richmond, etc., R. R. Co. v.*

*Louisa R. R. Co.*, 13 How. 71; *Charles R. Bridge v. Warren Bridge*, 11 Pet. 420.

Any of its property not actually in use, or absolutely necessary for the enjoyment of the franchise, is subject to condemnation for other purposes, the same as the property of an individual. *Enfield Toll Bridge Co. v. Hartford, etc., R. R. Co.*, 17 Conn. 40; *Backus v. Lebanon*, 11 N. H. 19; *Peoria, etc., R. R. Co. v. Peoria, etc., R. R. Co.*, 66 Ill. 174; *Iron R. R. Co. v. Ironton*, 19 Ohio St. 299.

All contracts are subject to the power of eminent domain, wherever the public necessity requires its exercise, and must be regarded as made with reference thereto.

Thus far we have regarded the contract claimed by the defendant as existing between the company and the city as containing a provision preventing the city from extending First street across the defendant's right of way, but it is not, in our view, certain that the common council ever intended to make such a contract, or that its action taken will bear that construction. It is quite plain, we think, that the acceptance of the company's proposition was not in the terms expressed in the action taken by the council. It is not, however, of importance to determine that question now. If the construction given to the proceedings by defendant's counsel is correct, the contract would be of no effect in this case. The third point made by counsel for defendant cannot, therefore, be sustained.

The defendant's fourth point relates to the damages to which the company is entitled if the contract shall not be found to be a bar to the proceedings, and it is insisted that the defendant's requests from the seventh to and including the twelfth should have been given, and it is further claimed that that portion of the charge above quoted relating to damages (it being all that was given upon that subject) was insufficient to give the jury proper information as to what

elements should be considered by them upon that question. We are inclined to think that this point made by defendant's counsel must be sustained. We think it quite clearly appears that the damages awarded in this case were only for the use of the land occupied by the street in crossing the defendant's right of way; but added to that should be any extra expense created by the use of the right of way for the street, in the ordinary use of the defendant's' road, and such other damage as it may sustain for injury to its track, right of way, and franchise, occasioned by the crossing, and which may be properly considered as the natural, necessary, and approximate cause thereof. *Toledo, etc., Ry. Co. v. Detroit, L. & N. R. R. Co.*, 62 Mich. 564; *Grand Rapids v. Grand Rapids & I. R. R. Co.*, 58 Id. 641; *People v. Lake Shore & M. S. Ry. Co.*, 52 Id. 277; *Massachusetts Cent. R. R. Co. v. Boston, C. & F. R. R. Co.*, 121 Mass. 124; *Com. v. Boston & M. R. R.*, 3 Cush. 25; *Flint & P. M. R. R. Co. v. Detroit & B. C. R. R. Co.*, 64 Mich. 350.

The rule here stated will not include expenses made necessary in order to comply with the police regulations of the State or municipality, but such damages only as arise in making the structural changes necessary to comply with statutory regulations, and which must necessarily continue in the future operation of the defendant's road. We are now speaking of highway crossings. When one railroad crosses another, other elements of damage may exist, and be properly taken into consideration under the particular circumstances of the case. In this case counsel for defendant requested the court substantially to instruct the jury that the structural changes necessary to be made in consequence of the crossing might be considered by the jury, and, while we think the requests as presented were properly refused, the court failed to give the jury any instruction upon the subject which would be likely to be regarded by the jury as including the expenses for such changes. And, without any request

on the part of defendant's counsel, we think it was the duty of the court to give such instruction. For this error we think the verdict of the jury must be set aside, and the case will be sent back for a new trial.

CHAMPLIN and MORSE, JJ., concurred.

CAMPBELL, C. J. I concur in setting aside these proceedings; but I think, also, that there are further difficulties in the way than my Brother SHERWOOD has recognized.

So far as damages are concerned, the Constitution requires that property shall not be taken without complete indemnity. This can only be given by putting the person or company whose land is given in such a position that he or they will be no worse off pecuniarily than if the land had not been taken; and I do not think it can make any difference whether the loss to be compensated consists in one sort of burden or another. A pecuniary burden is no less and no greater because it is imposed by the public, or in any other way. It is the diminution of value, however it may be caused, which must be made good.

I cannot see that there is anything illegal or improper in the agreement of the city to take no steps to open First street across the company's depot grounds. If this had been an agreement between two private persons, no one could doubt its validity. Any one in this State may plat his lands, and put streets on them, wherever he pleases, and, if the public accept the plat, they become public ways. But if a land-owner should, for any reason satisfactory to himself, agree not to put streets here or there, such a contract would not be contrary to public policy. There is, of course, a difference between public and private dedications, but it is not one of so much importance as it is sometimes assumed.

I do not think that there is any particular sacredness in streets and ways which makes dealings with them the highest act of sovereignty, or any exercise of sovereignty at all out of the common order of things. It needs no argument to

show that no government can abdicate any one of its public powers. One is no more important than another. But it is no abdication of sovereignty to make a particular contract which restrains the government from exercising powers that it otherwise might have exercised. The State of Michigan cannot relinquish its sovereignty over the whole State, or any considerable part of it. But the present Legislature has ceded jurisdiction over a tract in the city of Detroit to the United States government for the purpose of enabling it to do on its own premises what it could just as well do on leased premises, and where it is a matter of pure convenience, and not of necessity. The taxing power is infinitely more important than that of opening streets, or any kind of ways, which may be opened by private persons just as well as by the public. But there are in every state exemptions from taxation which every one considers proper and necessary, and there are probably in every state more or less cases where, for considerations satisfactory to the government, such exemptions have been fixed by contract, and such contracts cannot be repudiated.

In this State the opening of streets can hardly be considered sovereign or even legislative business. If it were a matter of such solemnity as is claimed, the designation of a highway would seem to be a very important act of State. But in Michigan the Legislature itself cannot open a highway over private property, or make its declaration of necessity effective. Any jury summoned to act in the matter may overthrow the legislative opinion of necessity. A highway commissioner is the only authority in this State which can determine such matters without the aid of any one else. In street-opening cases, the city is a mere petitioner to a court, and the jury may or may not grant its petition. In this respect it occupies no higher or other position than a private railroad corporation that makes a similar petition on exactly the same grounds, namely, that the public exigencies require

the road to be laid out across private property. Either of them may lay out streets or railways across any land which they can procure leave to cross, if they choose to do so. I can see no legal or other reason why, with full power to determine where the streets shall be laid out, or shall not be laid out, any corporation may not agree to do what it has full power to do without agreement. It must be remembered that any agreement which will tie the hands of a municipality because of a supposed abdication of sovereignty must apply just as well to the Legislature. Our laws are full of statutes forbidding the opening of roads through lands set out for particular purposes by private action. Cemeteries, orchards, mill-dams, and other tenements cannot be destroyed by this supposed public necessity, under our present laws, where no one doubts cities and highway commissioners have all the authority that public good requires. The Legislature itself is forbidden by the Constitution to interfere with certain private plats. In some, at least, of our cities, the parks and public grounds are exempted from the power of the city to open roads through them. These prohibitions have been recognized as valid. *Board of Education v. City of Detroit,* 30 Mich. 505. On the other hand, it is competent both for the Legislature and for cities, after the public necessity has been declared in the legal way, to vacate streets, no matter how they have been opened, whenever they see fit.

It can never be a matter of necessity to have a city or other street opened one or two hundred feet from a given point. Private property may, no doubt, be enhanced in value by having streets directly continuous. But a deviation which may be had at the pleasure of the council cannot be so vitally dangerous that they cannot agree to make it when they can make it without agreement, if they choose to do so. The building in which we sit interrupts the course of two important streets in Lansing, but no one supposes it necessary that Lansing should be able to destroy the State Capitol

by opening them. A city may have opportunities, and it may be greatly for its interest, to procure a public park, which no one would give unless on the assurance that it would be preserved. It has never been supposed that a city violated its public duty by agreeing to preserve such a park, although it may prevent a dozen streets from being continued.

It has been held repeatedly by the United States Supreme Court that a legislature may preclude itself, and all its people, from constructing bridges and similar easements within a certain space, in consideration of some desirable public convenience which would compensate for the exclusion. These exclusive privileges have not always been wisely granted, but they have nevertheless been sustained, on the ground that it is proper for public as well as private purposes to buy one advantage by the surrender of another.

It seems to me there is no reason why an agreement not to run First street through this property should not be enforced.