CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant, vs. CITY OF MILWAUKEE, Respondent.

SAME, Respondent, vs. SAME, Appellant.

*October 22 — November 16, 1897.*

*Constitutional law as to police power and the obligations of contracts: Railroads, crossing of by new highway: Duty of railroad company as to: Compensation for necessary changes.*

1. Corporations are subject to such reasonable police regulations as the legislature may see fit from time to time to adopt to promote public health, morals, and safety; also to the reserved power under the constitution to alter or amend corporate charters.

2. Compliance with valid police regulations and changes in corporate charters are not subjects for compensation. They are not violations of the inhibitions of the constitution upon the impairment of the obligations of contracts, or the deprivation of property without due process of law, or of the equal protection of the laws.

3. Legislative authority under the police power of the state extends to all matters necessary to a safe crossing of a railway track by a highway, without regard to whether exercised before or after the construction of the railroad, or before or after the construction of the highway, or whether the highway existed at the time of the construction of the railroad, or was thereafter constructed across it.

4. The requirement for the construction and maintenance of cattle guards, warning posts, crossing signs, crossing gates, and the planking of tracks are equally proper subjects for police regulations when the legislature shall see fit to exercise its authority in that regard.

Chicago, Milwaukee & St. Paul R. Co. vs. City of Milwaukee.

5. The statute of this state (sec. 1836, R. S.) in regard to the restoration of highways crossed by railroads does not apply to a highway constructed after the construction of the railroad which it crosses.

6. Sec. 1809, R. S., in regard to crossing signs, and sec. 1810, R. S., in regard to the construction and maintenance of cattle guards, apply to all railroads without respect to when constructed.

7. Where a new highway is laid out and opened across a railway track, the railway company is entitled to compensation for the diminished value of its easement in the land on account of the establishment of the new way, and the cost of making and maintaining such structural changes in its road bed and track as become necessary in order to protect and preserve its track for the old use, notwithstanding the new use, except, however, such changes as are required by law under the police power of the state or the constitutional reservation of power to alter or amend corporate charters.

8. Such structural changes include planking of the track and maintaining the same, but do not include the removal of the planking from time to time to enable the railway company to do the necessary tamping and to remove snow and ice from between the rails, the latter being mere operating expenses and too conjectural to form any basis for compensation. They do not include crossing gates; they are not structural changes in the track, and are not a necessary part of crossing construction.

[Syllabus by MARSHALL, J.]

APPEALS from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

The city of *Milwaukee,* for the purpose of extending a public street across the defendant's railway track and right of way, commenced proceedings to lay out and establish such street and to have the compensation to which plaintiff was entitled by reason thereof determined. Such proceedings were had that plaintiff's damages were assessed at $150, from which plaintiff appealed to the circuit court. The action was there tried on appeal and resulted in a special verdict as follows:

(1) The fair value, November 14, 1892, of so much of plaintiff's right of way as was taken by the defendant, subject to

its use for railway purposes, independent of the item of damages hereinafter found, is $1.

(2) The reasonable and probable expense of planking the crossing is $16.80.

(3) The sum of money sufficient to compensate the railway company for the expense of perpetually maintaining the planking is $70.

(4) It will probably cost the company for labor in removing and relaying the planking, to enable the company to do the necessary tamping, and to remove the snow and ice from between the rails and the planking, $10 per year.

(5) The sum of money necessary to compensate the company for such annual expense is $166.67.

(6) The reasonable and probable expense of the warning post and crossing sign was $7.

(7) The sum sufficient to compensate the company for perpetually maintaining the warning post and sign is $19.45.

(8) The reasonable and probable expense of constructing two cattle guards at the crossing is $30.

(9) The sum of money sufficient to compensate the company for perpetually maintaining the cattle guards is $50.

(10) The reasonable and probable expense of erecting gates at the crossing will be $400.

(11) The sum of money sufficient to compensate the company for the expense of perpetually maintaining such gates is $666.67.

(12) It will probably cost the company annually to operate the gates, $1,000.

(13) The sum of money reasonably necessary to compensate the company for the expense of perpetually operating the gates is $16,666.67.

Upon the coming in of the special verdict, plaintiff's attorney moved the court thereon for judgment for a sum sufficient to cover all the items of damages mentioned. De-

fendant also moved the court on the special verdict for a judgment in plaintiff's favor for one dollar, being the damages found in answer to the first question. Defendant's motion was denied. Plaintiff's motion was granted as to the damages found by the first, second, third, fourth, fifth, and sixth findings, amounting to $271.47, and was denied as to the other findings. Both parties appealed.

*C. H. Van Alstine,* counsel, for the plaintiff, contended that the city was liable under sec. 7, ch. 6, of its charter, to pay the value of the lands taken and the consequential damages arising from the taking. In the absence of any statute on the subject, the common law imposes upon the city the duty of making and maintaining all appliances necessary to the convenience and safety of the crossing. *Boston & A. R. Co. v. Cambridge,* 159 Mass. 287, and cases there cited; *Northern C. R. Co. v. Baltimore,* 46 Md. 445, 446, and cases there cited; *Chesapeake, O. & S. W. R. Co. v. Dyers Co.* (Tenn.), 38 Am. & Eng. R. Cas. 677, and cases there cited. This rule was not intended to be changed by secs. 1809, 1810, R. S., so as to apply to highway crossings thereafter made. A statute imposing the duty of making and maintaining those appliances upon the railroad company without compensation would be a taking of private property for public use in violation of the constitution. *Chicago & G. T. R. Co. v. Hough,* 61 Mich. 507; *Comm'rs of Parks & Boulevards of Detroit v. M. C. R. Co.* 90 id. 385; *Comm'rs of Parks & Boulevards of Detroit v. C., D. & C. G. T. J. R. Co.* 91 id. 291.

For the defendant there was a brief by *Howard Van Wyck,* city attorney, and *C. H. Hamilton,* of counsel, and oral argument by *Mr. Hamilton.*

MARSHALL, J. There is so much conflict in judicial authorities and the works of text writers respecting the subject here presented that we must depend more on fundamental princi-

ples than on adjudications of the precise questions involved, in order to reach a satisfactory conclusion. We are aided but little by previous decisions of this court, except as to the *principles* upon which this decision must rest, as the subject does not appear to have been heretofore presented very fully here. In *Blair v. M. & P. du C. R. Co.* 20 Wis. 262, the subject was somewhat involved, but not as relates to crossings of railroads by highways.

It may be laid down as established beyond reasonable controversy that railroad corporations are subject to all such reasonable regulations as may from time to time be prescribed by legislative authority, pursuant to the police power incident to the sovereignty of the state, and are also subject to the power reserved under the constitution, to alter or amend corporate charters. The charter of a corporation in no sense exempts it from police supervision and regulation. Such an exemption could never be implied from a mere grant of power, and would not be valid if expressly conferred. It is frequently and rightly said that sovereign authority cannot divest itself of its ordinary police power over persons, whether natural or artificial, any more than it can of the power to make laws or to punish crime. To accurately define such power is not entirely free from difficulty, and it is not necessary for the purposes of this case. It is sufficient to state some general principles, well established, within which all questions here involved plainly fall.

In *Beer Co. v. Massachusetts,* 97 U. S. 25, Mr. Justice BRADLEY said, in effect, that 'the police power at least extends to the protection of the lives, health, and property of citizens, and the promotion of good order and good morals.' In our judgment that is broad enough to cover the whole ground of police jurisdiction. When we say that, under it, the legislative branch of the government may constitutionally enact all reasonable regulations to promote the health, comfort, morals, and peace of society, and the safety of the

individual members thereof, there is little more that can be said on the subject. When an enactment goes clearly be-, yond that, judicially considered, it meets the bar of the constitution at some point, and is therefore void. The doctrine once advanced and contended for, that a grant of corporate rights may carry with it an exemption from police supervision, and an exercise of such supervision constitute an impairment of the contract between the state and the corporation, was long ago set at rest. In a leading case on the subject, *Thorpe v. R. & B. R. Co.* 27 Vt. 140, REDFIELD, C. J., said, in effect, that while the state cannot, by police regulations, destroy or essentially modify corporate franchises, it may regulate their mode of doing business to protect the public, the same in all respects as it can natural persons, and nothing in the corporate grants can or does restrict or take away such power. This court in *Attorney General v. Railroad Cos.* 35 Wis. 425, while approving the doctrine thus announced by Judge REDFIELD, so far as relates to the exercise of mere police power, and generally as an original proposition, in deference to the established doctrine of the federal court, "by whom all are bound," criticised it so far as it goes beyond mere police power and impairs the contract relations between the state and the corporation, where there is no reserve power to alter or amend corporate charters. But the criticism does not apply here, even if the doctrine of Judge REDFIELD's decision goes beyond the proper regulation of corporations under the police power, because power to alter or amend all corporate charters granted since the adoption of our state constitution was reserved by it. The rule stated by Judge Cooley, as to the true limitation of the police power as relates to corporations, was approved in the *Railway Cases,* and is to the effect that it is confined to such regulations as have reference to the comfort, welfare, or safety of society, and are not in conflict with any provision of the charter, and do.

not, under the pretense of regulating, take from the corporation any essential right or privilege which the charter confers upon it. In short, they must be regulations in fact, and not amendments to the charter in curtailment of corporate franchises. For the purposes of this case it is immaterial whether we hold that all the elements of damages for which plaintiff contends grow out of the duties imposed under the police regulations, or part under such regulations and part imposed under the reserve power to alter or amend corporate charters, because plaintiff is subject to both powers, as before stated, and is not entitled to compensation for the performance of any act lawfully required under either. Notwithstanding much conflict as to that, it is supported by ample authority, as we will endeavor to show.

In *People ex rel. Kimball v. B. & A. R. Co.* 70 N. Y. 569, the corporation, long after it had constructed its road, was required by legislative act to construct a bridge so as to carry an intersecting highway over such road. The act was sustained both under the reserve and the police power. EARL, J., in deciding the case, said, in substance, the legislature, under its reserve power, may not confiscate property, but it can impose upon railroad corporations such reasonable additional restrictions and burdens as the public good requires. It may regulate the speed of trains, the way in which they shall cross highways, and make all regulations proper to protect the lives of persons carried upon railroads or passing upon highways crossed by railroads, and all such are within the domain of legislative power, whether the power to alter or amend the charters of corporations has been reserved or not. Such legislation takes away no property and interferes with no vested right.

Judge Elliott, in his work on Railroads (section 1103), lays down as an elementary principle, that compliance with police regulations is not a subject for compensation, citing

many authorities, all of which, in one view, support it, but
many, in another, violate it. But the source of the conflict.
is not hard to discover. It goes back mainly to *Old Colony*
*& F. R. R. Co. v. Plymouth Co.* 14 Gray, 155, or is attrib-
utable to differences of opinion respecting what is and what.
is not within the scope of police power. The case cited was
one where the highway was laid out and established across.
an existing road. It was held that the railway corporation
was entitled to the expenses of erecting and maintaining
signs, required by law at the crossing, for making and main-
taining cattle guards at such crossing, if necessary, and for
the expense of flooring the crossing and keeping the plank-
ing in repair. Expenses claimed for complying with the
law in respect to ringing the engine bells, and increased lia-
bility for damages, and some other matters, were denied.
Nothing was said as to whether the damages disallowed, or
those allowed, were for matters of police regulation, or re-
quired by any statute of the state. By reference to the
then law of Massachusetts, which had existed for upwards.
of two years before the decision was rendered, we find some
explanation of any apparent failure that exists to recognize
the rule that compensation cannot be claimed for compliance
with police regulations. The case was argued in the early
part of 1859; it was decided in the following December..
The law referred to was in force as early as 1857, was car-
ried into the General Statutes of 1860 a few months after
the decision was filed, and applied to the case so far as it
relates to police jurisdiction, though enacted after the case
was commenced. It provided as follows: " If, after the lay-
ing out and making of a railroad, the public convenience
and necessity require a turnpike road or other way to be
laid out across it, such road or way may be so laid out and
established when the county commissioners so authorize and
direct, *and all expenses of, and incident to, constructing and*
*maintaining the road or way at such crossing, shall be borne*

*by the county, city, town or corporation owning the same."*
[Gen. Stat. 1860, ch. 63, § 57.]

In *Massachusetts Cent. R. Co. v. B., C. & F. R. Co.* 121 Mass. 124, reference was made to the damages recoverable by a railway corporation in case of a new crossing of its track by a highway, as identical with that in case of a new intersection of such track by a railroad, citing the *Old Colony Case* as authority, but the question so referred to was not involved in the case. The expression of the court was certainly wrong, except in view of the Massachusetts statute, which in effect made the rule for compensation the same in one case as in the other. Without such a statute police regulations are an important element for consideration in assessing the damages caused by laying a highway across a railroad. That is not true in case of a new intersection of one railroad by another. *In re First Street*, 66 Mich. 55. In *Boston & A. R. Co. v. Cambridge*, 159 Mass. 283, the court went over the whole subject and gave a very complete history of legislation on the subject, showing that the decision in the *Old Colony Case* was in exact accord with the statute on the subject as it existed when the case was argued and decided, but said that the rights of the parties were fixed before the enactment of the statute, hence were governed by, and the case decided upon, common-law principles. Having reached that conclusion the court, though admitting that several elements of damage, not recoverable according to the *Old Colony Case*, were quite as clearly within common-law principles as those there allowed, such as ringing engine bells and maintaining flagmen, refused to go further than the rule theretofore adopted, though aided by a statute which expressly made all expenses incident to maintaining and constructing a new crossing a charge against the municipality owning the same. So, no matter what view the court might have taken had it been at liberty to consider the question unhampered by its early decision, it was relieved of all em-

barrassment by the statutory enactment referred to. Inasmuch as such statute, though not in force when the *Old Colony Case* was commenced, was the law for over two years before it was decided, it is easier to believe that it influenced the decision than that the learned court intended to decide that compensation is recoverable by a railway corporation, in case of the construction of a new way across its track, for complying with mere police regulations. Upon the theory that it promulgated such doctrine, however, and that late Massachusetts cases show adherence to it, though such late cases could not do otherwise because of the statute referred to, some text writers and some courts have followed it till it has been firmly ingrafted into the jurisprudence of some states, and has largely shaped that of others, on the question under discussion.

The extent to which some courts have gone on the line indicated can be no better illustrated than by reference to *Kansas C. R. Co. v. Comm'rs of Jackson Co.* 45 Kan. 716, where the court, by Mr. Justice VALENTINE, said, in effect, that the fact that the duty of constructing cattle guards, fences, signs, etc., upon the laying of a highway across a railway track, were imposed under the police power of the state, was no sufficient answer to the claim of a railway corporation for compensation therefor, citing authorities in support of that view, all of which rest on the *Old Colony Case*, such as 6 Am. & Eng. Ency. of Law, 554, where this language is used: "Damages may be recovered for erecting crossing signs and maintaining crossings when the law requires that of the railway company." Also 1 Redf. R. R. (6th ed.), 420, to the effect that, in assessing damages, the railway company is entitled to the expense of erecting and maintaining crossing signs and cattle guards, and for maintaining the crossing. Also 1 Rorer, R. R. 555, and Mills, Eminent Dom. § 33, to the same effect. Also citing the New York court to the contrary view, with a statement that such contrary view is

based on the reserve power to alter or amend corporate charters. In Lewis, Eminent Dom. § 491, the same mistake is made respecting New York. Such contrary view is, in fact, placed on the reserve power to alter or amend, and the police power of the state as well, as we have heretofore shown. *People ex rel. Kimball v. B. & A. R. Co.* 70 N. Y. 569; and to the same effect are *Boston & M. R. Co. v. County Comm'rs*, 79 Me. 386; *Chicago & N. W. R. Co. v. Chicago*, 140 Ill. 309; *Ill. Cent. R. Co. v. Willenborg*, 117 Ill. 203; *Louisville, N. A. & C. R. Co. v. Smith*, 91 Ind. 119; *State ex rel. St. P., M. & M. R. Co. v. District Court of Hennepin Co.* 42 Minn. 247; *In re First Street*, 66 Mich. 55. The Kansas court cites the Michigan court as authority for its decision, but in *In re First Street, supra,* it is expressly stated that the latter court does not intend to lay down a rule that will give railway corporations damages for expenses in complying with police regulations, the intent being to compensate for structural changes required on account of a new use of the railway right of way. To the same effect is *Central R. Co. v. Bayonne*, 51 N. J. Law, 428. But few courts cite the *Old Colony Case* and apply it literally, as does the Kansas court. More of them, while referring to, and in part following, it, say that compliance with police regulations is not a subject for compensation; and so says Judge Elliott in Elliott, R. R. § 1103, citing the Massachusetts case.

So we find the early Massachusetts case referred to confidently by some courts and text writers to support the doctrine that compliance with police regulations will not support a claim for compensation, and referred to just as confidently by others to support a contrary view. It is safe to say that, rightly understood and applied, it supports the former doctrine only, and that the only conflict with it, when so rightly understood, grows out of differences as to what is and what is not within police jurisdiction. That is clearly illustrated in *State ex rel. St. P., M. & M. R. Co. v.*

*District Court of Hennepin Co., supra,* where it was expressly held that the expenses of constructing and maintaining cattle guards, wing fences, and crossing signs, required by an act passed after the construction of the railroad, were not recoverable as damages by the railway company because such construction and maintenance were in compliance with police regulations; but that the expense of planking the railway track at the crossing was for a structural change of the track itself, solely for the convenience of public travel and not in any sense pursuant to a police regulation, therefore that such expense, and that of maintaining the planking, were recoverable as damages. The *Old Colony Case* was cited and followed in principle, but the court differed with it in respect to whether constructing and maintaining cattle guards should be classed with police requirements or not. To support the doctrine that the planking was a part of a new highway and could not be imposed upon a railway corporation by a law enacted after the construction of the latter's road, the court cited *Ill. Cent. R. Co. v. Bloomington,* 76 Ill. 447, decided in 1875, which, so far as it may be read to support such doctrine, was overruled by the court that rendered it, some time before the Minnesota court was called upon to consider the subject. *Ill. Cent. R. Co. v. Willenborg,* 117 Ill. 203.

Discussion of this subject might be carried to great length, but sufficient has been said to show clearly that, notwithstanding much conflict as to what are and what are not matters of police regulations, the authorities are pretty uniform to the point that duties imposed by such regulations must be performed without compensation. Therefore it is important to see what is and what is not within such regulations.

That the authorities as to what uncompensated duties may be imposed upon railway companies under the police power take a very wide range has been heretofore indicated, and

may be further illustrated by the following: According to *Toledo, W. & W. R. Co. v. Jacksonville*, 67 Ill. 37; *Lake Shore & M. S. R. Co. v. C., S. & C. R. Co.* 30 Ohio St. 604; *Erie v. Erie Canal Co.* 59 Pa. St. 174; and Elliott, R. R. § 1114,— they include erecting and maintaining crossing gates and keeping flagmen. According to *Blair v. M. & P. du C. R. Co.* 20 Wis. 254; *Gillam v. S. C. & St. P. R. Co.* 26 Minn. 268; *State ex rel. St. P., M. & M. R. Co. v. District Court of Hennepin Co.* 42 Minn. 247,— they include cattle guards, fences, and wing fences. And according to *Wilder v. M. C. R. Co.* 65 Me. 332; *Thorpe v. R. & B. R. Co.* 27 Vt. 140; *State ex rel. Lancaster Co. v. C., B. & Q. R. Co.* 29 Neb. 412; *Chicago & N. W. R. Co. v. Chicago*, 140 Ill. 309; *People ex rel. Kimball v. B. & A. R. Co.* 70 N. Y. 569; *Albia v. C., B. & Q. R. Co.* (Iowa), 71 N. W. Rep. 541; *Kansas C. R. Co. v. Comm'rs of Jackson Co.* 45 Kan. 716; and *New York & N. E. R. Co.'s Appeal*, 62 Conn. 527, affirmed *New York & N. E. R. Co. v. Bristol*, 151 U. S. 556,— they include everything reasonably necessary to a safe crossing, especially at grade crossings. In *Chicago & N. W. R. Co. v. Chicago*, *supra*, the court had under consideration a legislative enactment, requiring railroad corporations, at all crossings of public highways of the state, outside of the corporate limits of cities and villages, to erect, construct, and maintain the same, and the approaches thereto, within their respective rights of way, so that they should be safe at all times as to lives of persons and property. The corporation claimed compensation, notwithstanding the act, for planking the track, repairing the same, erecting and maintaining crossing gates, and for elements ordinarily necessary to a safe crossing, and the court held that all the items, under such act, were such only as were involved in a compliance with a valid police regulation of the state; hence that no compensation could be claimed therefor, notwithstanding the railroad was constructed before the passage of the act and the street in

question was extended across the railway track after such construction. In *New York & N. E. R. Co. v. Bristol, supra,* FULLER, C. J., discussing the same subject, said, in effect, that it is thoroughly established that inhibitions of the constitution of the United States upon the impairment of obligations of contracts, or the deprivation of property without due process of law, or of the equal protection of the laws, by the state, are not violated by the legitimate use of legislative power in securing public safety, health, and morals; that such power cannot be contracted away, nor can property be withdrawn from the implied liability to governmental regulations under it in all essentials to the preservation of the community from injuries, and that legislation requiring a railway company to entirely remove and reconstruct its crossings, where that is deemed reasonably necessary for public safety, is within the domain of legislative power under police authority.

Crossing signs, warning posts, cattle guards, wing fences connecting cattle guards with side fences, crossing gates, the clearing of the approaches to render crossing signs visible, the maintenance of flagmen, building of flagmen's stations, ringing of engine bells, planking of tracks, and other things that might be mentioned, ordinarily required at railway crossings, especially in populous communities, are all matters pertaining to their safety for persons and property. That some of the things mentioned, such, for instance, as planking the track, serve a purpose other than that of mere safety, is true; but as it is as essential to the safety of the crossing as it is to its convenience for travel, no reason is perceived why it is not as much within the police regulations as the construction of cattle guards, or any of the other things to which reference has been made. The correct policy, in our judgment, is that held by the courts of New York, Maine, Illinois, and Iowa, that the probable results of

Chicago, Milwaukee & St. Paul R. Co. vs. City of Milwaukee.

a failure of duty respecting the safety of railway crossings are so serious that the public interests require, as between municipalities and railway corporations, that such duty be lodged in some one place, undivided, absolute, and with certainty, and that such place be the one where, in the estimation of legislative authority, it can be most readily, economically, certainly, and efficiently performed. Whichever place is designated, the municipalities owning the highways or the railway corporations, the expense directly or indirectly falls on the public. These considerations are abundantly sufficient, judicially considered, to legitimately locate the whole subject of maintaining safe crossings, within the domain of police regulations, so far as the legislative branch of the government may see fit to exercise its authority. It needs no extension of well-settled principles to reach this conclusion. But if it did, the increase of railroad operations, the growth of population and social and business activities, with consequent increasing dangers to persons and property, might reasonably warrant the extension. The tendency of modern development is in the direction of greater, rather than more restricted, use of police power, and necessarily so in order to meet the new dangers and increase of old dangers, constantly occurring as natural incidents of advancing civilization. We think the weight of modern authority is in accord with the views just expressed, and to the effect that everything that goes to make up a crossing, safe for public use, is as essentially within police regulations as any part of it. There is no good reason for singling out planking of the tracks from other essentials of a safe crossing; and saying that it is a mere structural change of the track and not a requirement for public safety. Nothing concerning a crossing any more promotes its safety than the usual planking, not only as regards protection to the track itself, but delays thereon and consequent dangers to life

and property. It is as essentially a part of a safe crossing for the railway as it is for the highway, and so uniformly considered, as we understand it.

The points decided show what may be subjects of police regulation and lead up to a consideration of what elements of damages claimed in this case are in fact for obedience to such regulations. Sec. 1809, R. S., provides that "every railroad corporation shall put up and maintain at all times, at every place where their railroad track crosses a public highway, and near such crossing, a large signboard, with the following inscription painted in large letters on each side: 'Look out for the cars,' in such manner as to be visible on the highway track at least an hundred feet distant on each side of the crossing." Sec. 1810 provides that "every railroad corporation, operating any railroad, . . . shall construct and maintain cattle guards at all highway crossings and connect their fences therewith, to prevent cattle and other domestic animals from going on such railroad." It is considered that the purpose of these sections to require railroad corporations to construct and maintain crossing signs and cattle guards, whether their roads were in existence at the time of the enactment of such sections, or whether afterwards constructed, is too plain for serious discussion. Both sections were clearly intended to have a prospective as well as present effect, and apply to all intersections of railroads and highways, present and future, without regard to which was the first constructed.

Sec. 1836, R. S., provides that "every corporation constructing, owning or using a railroad, shall restore every . . . street, highway, . . . across, along or upon which such railroad may be constructed, to its former state, or to such condition as that its usefulness shall not be materially impaired, and thereafter maintain the same in such condition against any effects in any manner produced by such railroad." The word "restore" relates to something having

a previous existence, and the same is true of the words, "across, along or upon which such railroad may be constructed." That appears to be quite conclusive. The effect of this is to divide, somewhat, highway crossings into two classes; one where the responsibility for their maintenance, as between the railway company and the municipality within which they are located, is on the former, and the other where such duty is on the latter, which is unfortunate and contrary to the general legislative policy. But we cannot do violence to the plain language of the statute, even to effect an *obvious* legislative policy. The contrary construction of a similar statute in Indiana (*Louisville, N. A. & C. R. Co. v. Smith,* 91 Ind. 119) does not appear to us to be sound.

It follows from what has preceded that there is no obligation on the part of the railroad company, under any law of this state, to plank between the railway tracks or on the sides of the track, or to maintain such planking; neither is there any law requiring the maintenance of crossing gates. Gates are not a necessary part of crossing construction. Therefore, there is no ground for taking such elements into consideration. If they should be recoverable on any theory, they could not be on the mere contingency that gates might some time be required by law. That would be, in our judgment, altogether too remote and speculative to constitute a basis for the assessment of damages (*Massachusetts C. R. Co. v. B. C. & F. R. Co.* 121 Mass. 124), though some authority exists to the contrary. But as we determine the law to be, whenever the construction of crossing gates shall be reasonably required by law, obedience to the requirement will fall under the police powers and not be a subject for compensation.

The elements covered by the fourth and fifth findings of the special verdict, being the probable expense of removing the planking from time to time to enable the company to do the necessary tamping and to remove the snow and ice from between the rails, are essentially mere ordinary operating

expenses, having nothing whatever to do with the making or maintaining of any structural changes in the track. Moreover they are too conjectural to be taken into consideration in the assessment of damages. Damages must be confined to the making and maintaining of requisite structural changes, not rightfully imposed on railroad corporations under the police power or power to alter and amend corporate charters, and to matters sufficiently tangible to furnish some reasonably certain basis upon which to compute them.

As to planking the track and maintaining such planking, the protection of the rails by planking is deemed a necessary part of railroad construction at highway and street crossings, for the purpose of protecting the track, and preventing unnecessary interference by passing teams with passing trains. It constitutes a structural change in the roadbed, strictly so called. The duty of doing the work without compensation has not been imposed on the plaintiff; therefore it should recover the expenses of such change and the maintenance of the same, being the amounts in findings two and three of the verdict.

The foregoing leads to this disposition of the questions presented on both appeals.

1. The plaintiff is entitled to damages for the diminished value of its property in the land taken for the new use, caused by such taking. To be sure such property is held by the railway company, in some respects, for public use, but it has many more of the elements of private property, and we hold the element of damage proper. In this we decline to follow the New York and some other courts holding to a different doctrine. This element of damage is covered by the first finding of the special verdict and was allowed by the trial court.

2. The second and third items of the special verdict, amounting to $86.80, for the expenses of planking the track and the future maintenance of the same, were properly al-

lowed by the trial court as for necessary structural changes in plaintiff's property, not required under any police regulation, but necessary to make such property conform to the new use, yet be properly protected and adapted for the old use.

3. The fourth and fifth elements in the special verdict, being for probable expenses of removing and replacing the planking from time to time, and removing snow and ice, are not recoverable, they being mere operating expenses, and too remote and conjectural to form a basis for the assessment of damages. The allowance of such items by the trial court was error.

4. The sixth, seventh, eighth, and ninth items, for expenses of erecting and maintaining a crossing sign, and of constructing and maintaining cattle guards, cover subjects required by police regulations, hence no compensation therefor is recoverable. They were properly disallowed by the trial court.

5. The tenth, eleventh, and twelfth items of the special verdict, covering expenses of erecting, maintaining, and operating crossing gates, are not recoverable, because not a necessary part of crossing construction in the absence of some law requiring the same, and, if there were such law, obedience thereto would be required without compensation under the police power. They were properly disallowed by the trial court.

So we find that the limit of plaintiff's right to recover by the verdict was $87.80. The court having given judgment for all the items included in that sum, and also for the items for removing and replacing, from time to time, the planking, and removing ice and snow, which we hold was error, the judgment must be reversed on the defendant's appeal; and as the amount awarded by the commissioners, from which the plaintiff appealed, was $150, and there was no appeal from such award allowed to the defendant city, it is

liable for such amount in any event (*Dickson v. Racine,* 65 Wis. 306), but is entitled to costs in the court below by reason of the plaintiff's having failed to increase the amount of the award, and is entitled to costs in this court on both appeals.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment in favor of the plaintiff for $150 damages, and in favor of the defendant for costs in that court. Judgment for costs is allowed in this court in favor of the defendant on each appeal.