# THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* JOHN K. COWEN AND OSCAR G. MURRAY, RECEIVERS OF THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Construction by Municipality of Street or Sewer across Railway Tracks—Compensation for Necessary Structural Changes—Maintenance of Guards and Gates at Railway Crossings—Consequential Damages from Change of Grade of Streets.*

When a street or a sewer is made by a municipal corporation across the tracks of a railway company the cost of making such structural changes in the road-bed as are necessary in order to protect and preserve the tracks for their former use, must be borne by the municipality.

When a street is opened across the tracks of a railway company under condemnation proceedings by a municipality, the effect of the judgment is not to give the exclusive use of the land to the city, but only a right of way subject to the right of way of the railway company.

Cattle guards, crossing gates, the maintenance of flagmen, ringing of bells and other things ordinarily required at railway crossings in populous communities are matters within the police power, and when the duty to construct them has been imposed upon the railway company by statute, no compensation therefor can be recovered.

A railway company had acquired a valid right of way for its tracks by adverse user at a certain point, when a street was opened across the tracks under a municipal ordinance. The condemnation proceedings opened the street subject to the right of way of the railway. Afterwards the city constructed a sewer along the street and under the tracks, and the railway company found it necessary to strengthen the side walls of the sewer, raise the tracks and put in iron girders. *Held:*

1. That the municipality is chargeable with the cost of these alterations.

2. That the damage to the railway company was not a consequential damage arising from a change in the grade of the street, since the company was not occupying under license a street already opened but the construction of the sewer invaded the actual property rights of the company.

3. That the fact that the new sewer was used to carry the water which formerly ran in a sewer sixty feet distant and which passed under the railway tracks, made no difference since the two sewers are not identical.

Appeal from a judgment of the Superior Court of Baltimore City (RITCHIE, J.). At the trial, the defendant's tenth prayer instructed the jury that the city of Baltimore, in the exercise of the power conferred upon it by the city, has the paramount right to construct sewers in and along and under public streets of the city as it sees fit, and that for such incidental injuries as result therefrom, as complained of in this action, it is not liable.

The Court refused all of defendant's prayers, and instructed the jury as follows:

From the uncontradicted evidence in the case it appears that in the proceedings for opening Scott street under Ordinance No. 9 of 1884-5, no damages were awarded or paid for the fee-simple interest in lot " B," a lot about 66 feet square lying in the bed of Scott street, and that if the defendant acquired any interest in said lot under said proceedings it was an interest as therein expressed " subject to the right of way of the Baltimore and Ohio Railroad." It further appears that for more than thirty-five years past the said railroad company has been in the continuous and undisturbed possession of a right of way for its railway over said lot, claiming ownership of said right of way and occupying and using the same for the road-bed of its main stem. It also appears that in the proceedings for said opening of Scott street neither the said right of way nor any interest or title of said company therein was condemned, and the city of Baltimore has never acquired any title to the railroad company's easement of a right of way over said

lot or to any part of or interest in said easement. And the jury is instructed that if they find from the evidence that under Ordinance No. 35 of 1895, the city commissioner was authorized and directed by the defendant to construct a sewer under the bed of Scott street, as provided therein, and that the plan of said sewer required that it should be built and pass under the road-bed of said company's railroad then lying upon and across lot " B " and that the excavation for and construction of said sewer necessarily disturbed the support of said tracks while the work was in progress and without the substitution of some other support would have undermined the said road-bed and have permanently destroyed the company's easement over said lot; and shall further find that the readjustment of said road-bed and its adaptation to said sewer without suspending the operation of said road was work of such peculiar character and importance that it could not be accomplished by any force at the service of the defendant, and that while the said company and said commissioner differed as to whether the expense thereof should be borne by the company or by the city and came to no understanding upon this question, it was nevertheless conceded and understood that whether said expense should be borne by the company or the city the actual execution of the work should be entrusted to the plaintiffs, and that while no waiver was made by either in respect to the liability for said expense, the said commissioner did in fact request the plaintiffs to do said work, and that said work was done by plaintiffs and done in accordance with plans agreed to and approved by said city commissioner; and shall further find that the work of protecting said road-bed during the construction of said sewer and the elevation of said road-bed, and the erection of the bridge structure referred to as a permanent support for said road-bed were made necessary by the construction of said sewer and in order that it might pass under said road-bed without the destruction or impairment of said right of way, and that the work done and materials furnished by plaintiffs in and about the several matters

mentioned were necessary and proper, then the plaintiffs
are entitled to recover what was the fair and reasonable
value of said work and materials.

The cause was argued before McSHERRY, C. J.,
BRYAN, BRISCOE, PAGE and BOYD, JJ.

*John V. L. Findlay, City Counsellor,* for the appellant.

*W. Irvine Cross* and *H. R. Preston* (with whom was
*H. L. Bond, Jr.,* on the brief), for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

This suit was instituted by the receivers of the Balti-
more and Ohio Railroad Company to recover from the
mayor and city council of Baltimore the expenses which
plaintiffs incurred in consequence of the construction of
a sewer by the city under a portion of the railroad com-
pany's tracks.  There is no dispute about the facts.
From eighteen hundred and sixty-one until the present
time the company has held by a prescriptive right, if
by no other title, the actual possession of a lot of ground
about sixty-six by sixty-six feet in size.  Whether this
adverse possession gave the company a fee simple estate
in the lot, or merely an easement—a right of way over
it—is for the purposes of this case immaterial.  The lot
is situated in the bed of what is now Scott street within
the city limits.  Upon the lot four tracks of the railway
are located at right angles to the line of the street.
These tracks have been thus located and have been con-
tinuously used by the company, certainly since eighteen
hundred and sixty-one, and probably for a much longer
period.  By ordinance No. 9 of 1884-5, the mayor and
city council provided for the opening of Scott street.
The street crosses the tracks at grade.  The usual pro-
ceedings were had.  The return and plat made by the
commissioners for opening streets show that the lot
above alluded to and described in the street-opening
proceedings as Lot B, was dealt with as follows: " To
the Consolidated Gas Light Company of Baltimore, or

to such person or persons as may be legally entitled thereto, for damages to the fee simple interest in all that ground " designated on the plat by the letter B, " *the aforesaid piece or parcel of ground being subject to the right of way of the Baltimore and Ohio Railroad: o o o*" It seems to have been assumed that the title to the lot was in the gas company; and it is apparent that no condemnation was made of the interest of the railroad company in this lot, because the only condemnation affecting the lot was specifically and in explicit terms a condemnation subject to the right of way of the Baltimore and Ohio Railroad Company. Whatever else was condemned, obviously the right of way of the railroad company was not condemned or attempted to be condemned. That right remained as perfect and unimpaired after the condemnation as it had been before; and consequently the easement which the company undeniably possessed was not acquired or interfered with by the city at all. The city, therefore, succeeded to none of the rights of the company in this easement and obtained no authority or semblance of authority to disturb or to interrupt the company's accustomed use of it. If this be not so, then the reservation in the condemnation proceeding is utterly meaningless and unintelligible. If, notwithstanding the failure to award any damages to the supposed owner of the fee, the city still acquired the servient estate in this lot under the condemnation, it only acquired it subject to the express reservation of the company's dominant easement. In a proceeding by the city against a railway company to condemn a part of its track for the extension of a public street over or across such track, a judgment of condemnation, no matter in what language couched, will not take the land itself, or the exclusive use thereof, but the city will acquire only a joint right with the railway company to the use of the land condemned. The use by the public will be, as a matter of fact, subject and subordinate. *Ill. C. R. Co.* v. *Chicago,* 141 Ill. 586; 8 *Am. & Eng. Ency. Law* (2nd Ed.) 379. This dominant estate is property. If a mere right of way, it is no less property, for a right

of way is the right held by the company in the land over
which its road runs for railroad purposes.    19 *Am. &*
*Eng. Ency. Law,* 839.    This property the city never
sought or attempted to obtain.    These respective
estates of the company and the city in this lot being thus
distinctly separate, the mayor and city council, on April
the seventeenth, 1895, passed Ordinance No. 35, pro-
viding for the construction of a sewer along and under
the bed of Scott street.    The elevation of the sewer,
which passes under the railroad tracks on this lot at a
right angle to the tracks, was such that it was necessary
that the arch of the structure should be flat and without
sufficient curvature to give it the strength required to
support the weight of the heavy trains passing over it;
and so the engineer of the company prepared plans for
carrying the railroad over the sewer; and these plans in-
cluded the strengthening of the side walls of the sewer
and fitting them for use as abutments to sustain steel
girders which were laid thereon to support the tracks.
In addition to furnishing and putting in position the
steel girders, the work done by the railroad company in
consequence of the construction of the sewer consisted
of the digging of trenches on both sides of the sewer,
placing supports or false work in those trenches and
laying beams across so that the earth or core could be
excavated without interrupting the running of trains;
and besides this it became necessary to raise the tracks
on either side of the sewer for some distance because of
the elevation of the sewer.    The total cost of the work
done and the materials furnished by the company was
four thousand eight hundred and sixty-nine dollars and
twelve cents.

Some sixty or seventy feet west of Scott street the
railroad tracks cross Chatsworth run on an iron bridge.
This run was originally an open stream, but later on
parts of its bed in another section of the city had been
converted into a city sewer.    *Kranz* v. *M. & C. C. of*
*Balto.,* 64 Md. 491.    After the sewer along Scott street
was finished, the water in that part of Chatsworth run,
which was still an open stream and which was near the

intersection of Scott street and the railroad tracks, was turned into the artificial sewer, and the channel of the run was partially filled up. These facts are now alluded to as they bear upon one of the defences relied on by the city.

When the evidence on both sides was closed the defendant asked ten instructions, all of which were refused; and in lieu of those requested by the plaintiffs the learned trial Judge gave one prepared by himself. From these rulings the single bill of exceptions found in the record was taken. The verdict and judgment were against the city and it has appealed.

The ascertainment of the respective rights of the city and the company in these intersecting ways—the street and the railroad bed—and a clear perception of the correlative and consequent duties incumbent on each of the parties, will solve the fundamental inquiry in this controversy; and the solution of that inquiry will indicate with but little further discussion the proper disposition to be made of the other questions raised by the rejected prayers.

It appears without dispute or contention that for at least thirty-seven years the railroad company has been in the open, continuous, undisturbed and unchallenged possession of a right of way for the tracks of its main line over this lot, with little or no variation in their alignment, claiming ownership, occupying and using the land for the movement and passage of its numerous trains. That this long, notorious and adverse user ripened into a vested right many years before the ordinance to open Scott street was passed, cannot be and has not been denied. This was a property right, perfect and complete, owned and actually possessed by the railroad company prior to the time that the city took the first step under the ordinance just alluded to. Nothing that was done in virtue of that ordinance, or in the execution of its provisions, abridged or extinguished or impaired that property right in the most remote degree. As a consequence when the city came to construct its sewer under that right of way, it was bound to construct

it in such a manner as not to interfere with or injure the dominant right of the company. " At common law it is undoubtedly the rule that where a new way or road is made across another which is already in existence and use, the crossing must not only be made with as little injury as possible to the old road or way, but whatever structures are necessary for such crossings must be erected and maintained at the expense of the party under whose authority and direction they are made. And if the old road or way cannot be crossed without damage to it, and the right to cross is given, such damage must be assessed and paid. This principle is recognized as settled law in many well-considered cases." *N. C. Ry. Co.* v. *Mayor & C. C.*, 46 Md. 445-6. In the very recent case of *Chic. Mil. & St. P. Ry. Co.* v. *Milwaukee*, 97 Wis. 418, the same doctrine is thus stated: " Where a new highway is laid out and opened across a railway track, the railway company is entitled to compensation for the diminished value of its easement in the land on account of the establishment of the new way, and the cost of making and maintaining *such structural changes in its road-bed and track* as become necessary in order to protect and preserve its track for the old use, notwithstanding the new use, except, however, such changes as are required by law under the police power of the State or the constitutional reservation of power to alter or amend corporate charters." See also, in addition to the cases cited, in 46 Md.; *Kan. C. R. Co.* v. *Coms. of Jackson Co.*, 45 Kan. 716; *In re First Street*, 66 Mich. 55; *Cen. R. Co.* v. *Bayonne*, 51 N. J. L. 428; 17 *Atl. Rep.* 972; 6 *Am. & Eng. Ency. L.* (2d. Ed.) 554. In *Cent. R. Co.* v. *Bayonne, supra*, a street was opened across the railway company's property at a point where there were five lines of tracks and two switches, and a ditch for the drainage of water along each side of the railroad. It became necessary to move the switches to another locality and to construct culverts in place of the ditches to preserve the waterway, and to lay planking between the tracks so as to protect the rails from injury. " These consequences will flow," says the Court, " directly and inevi-

tably from the taking of such an interest in the property of the prosecutor (the railroad company) as will be required for the proposed highway." "According to these views, it seems plain that the removal of the switches, the planking of the road-bed, the construction of culverts, and the erection of the sign-board, are necessary items of expenditure, against which the prosecutor should be indemnified." Cattle-guards, crossing gates, the maintenance of flagmen, ringing of bells and other things ordinarily required at railway crossings especially in populous communities (and according to some though not all of the cases, sign-boards or warning posts) are matters pertaining to the public safety and are within the police power; and when the duty to construct them has been imposed on the railway company by statute no compensation for erecting or maintaining them can be recovered. But this does not affect or qualify the doctrine that structural changes made necessary by the street crossing the railroad must be paid for by the municipality.

It must be borne in mind that the compensation claimed by the railroad company is claimed for the damages it sustained in consequence of the construction by the city of the sewer under the tracks—in consequence, therefore, of an actual invasion of the company's right of way and not for mere consequential damages. The sewer is a part of the street, and that portion of it beneath the tracks being necessary for the use of all the rest of it, was a structure which the city was required to build in crossing the company's right of way. The building of the sewer being, then, a part of the construction of the street, and the right to cross the railroad tracks—the old right of way with the street—the new way—being a right explicitly subject to the existence and the continuous use of the prior easement that had not been condemned, the duty to construct the crossing was incumbent on the city; and if in the discharge of that duty it caused the railroad company injury in the way already pointed out and to the extent sued for, it is bound to make compensation. This conclusion is

inevitable, and we do not understand it to be disputed if the principle applied in *N. C. Ry. Co.* v. *Mayor & C. C., supra,* has reference to the case at bar.

But it was vigorously contended in the argument that the decision in the case just referred to had no relation to this case; and it was insisted that the city was not liable at all, because what it did in the construction of the sewer and in the opening of Scott street was done in the exercise of its governmental functions. And the doctrine was invoked that a municipal corporation is not liable in an action for consequential damages to private property or persons (unless made so by statute) when the act complained of was done by its officers under and pursuant to authority conferred by a valid Act of the Legislature, and there has been no want of reasonable care or skill in the execution of the power. In support of this there were cited the well-known cases in which it has been held that an abutting proprietor cannot recover from the municipality the consequential damages he has sustained by a change in the grade of a public highway; and it was argued that it was impossible to distinguish between an injury that leaves a house so high up or so low down by a change in the grade of a street as to make it inaccessible, and an injury whereby a right of way is temporarily disturbed, so far as the consequential nature of the damages is concerned. But it is precisely because there *is* a distinction between the class of cases just alluded to and the group to which the one at bar belongs that the former are inapplicable to the decision of the latter. The distinction is this: In cases like the pending one, where an existing way is crossed by a new way and the prior way cannot be crossed without the infliction of injury, the damages must be paid by those who construct the new road. In cases of the other class there is no occupation by the municipality of the individual's property or easement. There is just, then, the distinction that exists between the occupancy and the non-occupancy of another's property. If the municipality occupies in opening and maintraining its street the *private* property—the right of way

of an individual or a railroad, by crossing with its street that right of way without a condemnation of the prior easement, it must pay the damages it subjects the owner to by that occupancy. The occupancy—the right of the public to use the private easement—is continuous. If the municipality simply grades or regrades its streets and does this skilfully without trenching on the property of the adjoining owner, it is under no obligation to pay consequential damages because the individual holds his abutting and untaken property subject to the superior right of the governmental agencies to make such changes in the grade of the highways as the public convenience may require. It is obvious, therefore, that totally different legal principles are applicable to these dissimilar classes of cases.

It was claimed, and some of the prayers were framed upon the theory, that inasmuch as Chatsworth run in another portion of the city had for half a century been a city sewer which the mayor and city council were bound to keep in repair (64 Md. 491), and inasmuch as a part of that run, uninclosed, passed under the tracks of the railroad some sixty feet west of Scott street, and because the run had been used as a sewer prior to the location of the railroad; the city when it built the sewer under Scott street, sixty feet east of the old open run and then diverted the water from the open run into the new sewer, was not liable for the damages sued for. This proposition assumes that the diversion of the water from the natural sewer into the artificial sewer made the latter the same identical sewer that the former had been though separated from it by a distance of sixty feet, and that consequently the damages sued for were sustained, not by the construction of a new sewer across the right of way, but by the repair of an old sewer which existed prior to the acquisition by the company of its right of way. The location of Chatsworth run was not changed by diverting the water from it into a totally different sewer—and that diversion could not convert a recently-constructed sewer into one having an existence prior to the inception of the company's prescriptive right.

The prayers which denied a recovery on the ground that the city could not be held responsible for a change in the grade of its streets were properly refused, because the damages sued for are not damages caused by a change in the grade of a street, but caused by a change in the grade of the railroad and rendered necessary by the method in which the city constructed its street over and upon the company's right of way.

If the company had had no easement—no property right in the lot in question—but possessed a mere license to lay its tracks across or along a public street, then the tenth prayer would have been right. Occupying a street already opened and graded, its occupancy would have been subject to the paramount right of the city to alter and change the grade and the company would have been bound to know that its use of the bed of the street for railway purposes would be liable at any time to be interfered with whenever the city authorities deemed it necessary for the public welfare. *Kirby & Loane* v. *Citizens Ry. Co.*, 48 Md. 168. The effort to distinguish this case from *N. C. R. Co.* v. *M. & C. C.*, *supra*, because in this the crossing is at grade whilst in that it was above grade is fully met by *Chica. Mil. & St. P. Ry.* v. *Milwaukee*, *supra*, and *Cent. R. Co.* v. *Bayonne*, *supra*.

The instruction given to the jury by the learned and able Judge of the Superior Court fully covered the whole law of the case, and as we find that he committed no error in the rulings complained of, the judgment will be affirmed.

*Judgment affirmed with costs in this Court and in the Court below.*