CITY OF MILWAUKEE, Appellant, vs. RAILROAD COMMISSION
OF WISCONSIN, Respondent.

*December 10, 1915—January 11, 1916.*

*Railroad commission: Abolishing grade crossings: Apportionment of
cost: Constitutional law: Police power: Delegation of legislative
power: Police regulations in railroad charters may be changed:
Statutes: Construction: Effect on city charters, etc.*

1. Sec. 1797—12e, Stats. 1913,—authorizing the railroad commission
   to order alterations made in any railroad crossing over a high-
   way, or the substitution of a crossing not at grade when public
   safety requires such alteration or substitution, and to appor-
   tion the cost between the railway company and the municipality
   in interest,—is a valid exercise of the police power of the state
   and does not unlawfully delegate legislative power to an admin-
   istrative body. *Polk v. Railroad Comm.* 154 Wis. 523, followed.

2. A provision in the original charter under which a railroad was
   built that the road should be so constructed as not to impede
   or obstruct the free use and passage of any public roads which
   may cross the same, "and in all places where said railroad
   may cross or in any way interfere with any public road, it shall
   be the duty of said company to make, or cause to be made, a suf-
   ficient causeway or passageway, to enable all persons passing or
   traveling such public road to pass over or under such railroad,"
   did not by acceptance of the charter become a contract, but was
   a mere police regulation imposed by the state in the interest of
   public safety, which the state might at any time change.

3. The intent of the legislature in the enactment of ch. 540, Laws
   1909 (relating to railroad crossings), of which sec. 1797—12e
   formed a part, was to make a uniform and exclusive system ap-
   plicable to all cities and other municipalities, and to amend all
   previous provisions on the subject, whether contained in city
   charters, railroad charters, or the general statutes of the state.

APPEAL from an order of the circuit court for Dane county:
E. RAY STEVENS, Circuit Judge. *Affirmed.*

Upon the petition of the city of *Milwaukee* the *Railroad
Commission* ordered the Chicago, Milwaukee & St. Paul
Railway Company to depress its main track, switch tracks,
and sidetracks at and between certain street crossings in said
city, being a distance of nearly two miles, so that the grade

of the tracks should be separated from the grade of the streets, the tracks being carried in a subway and the streets being carried on bridges across said subway, and further ordered the city to pay twenty-five per cent. of the cost of the work, the railway company seventy per cent., and the Milwaukee Electric Railway & Light Company five per cent. The order was made because, in the judgment of the *Commission,* public safety required the abolition of grade crossings. The city brings this action to set aside that part of the order assessing twenty-five per cent. of the cost of the work against the city of *Milwaukee,* and from an order sustaining a general demurrer to the complaint the city appeals.

*Daniel W. Hoan,* city attorney, for the appellant.

For the respondent there was a brief by the *Attorney General* and *Walter Drew,* deputy attorney general, and oral argument by *Mr. Drew.*

*C. H. Van Alstine,* as a friend of the court.

WINSLOW, C. J. The order of the *Railroad Commission* in question here was made pursuant to the provisions of sec. 1797—12e, Stats. 1913, which authorizes that *Commission,* upon the petition of the governing body of any city, town, or village, to order alterations made in any railroad crossings over a highway, or the substitution of a crossing not at grade, where public safety requires such alteration or substitution, and to fix the proportions of the cost thereof to be paid by the railroad company or companies and the municipality or municipalities in interest. This is the same statute which was sustained and enforced in the case of *Polk v. Railroad Comm.* 154 Wis. 523, 143 N. W. 191, and we regard the decision there made as decisive of the present case.

The cases are alike in all essential particulars. While no constitutional objection was urged by counsel in that case, the question was carefully considered by the court, and, after hearing the argument in the present case, we see no reason

to retract or qualify in any way the statement there made that "the legislature in the exercise of its police power had a perfect right to enact the law."

The time has gone by when it can be successfully claimed that such a law unlawfully delegates legislative power to an administrative body. The legislature has exercised the legislative function by declaring that unsafe crossings shall be made safe; it can properly delegate to an administrative board the power to ascertain the crossings which are in fact unsafe, and to prescribe the manner of making them safe. If this could not be done the police power would be unable to cope with many of the most serious problems of modern life. *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905; *State ex rel. N. P. R. Co. v. Railroad Comm.* 140 Wis. 145, 166, 169, 121 N. W. 919.

It is argued that the present case is essentially different from the *Polk Case* by reason of the fact that the original charter of the Milwaukee and Waukesha Railroad (Terr. Laws 1847, p. 194), under which the railroad in question was built, provided that the road should be so constructed as not to impede or obstruct the free use and passage of any public roads which may cross the same, "and in all places where said railroad may cross or in any way interfere with any public road, it shall be the duty of said company to make, or cause to be made, a sufficient causeway or passageway, to enable all persons passing or traveling such public road to pass over or under such railroad." The claim is that by the acceptance of the charter this provision became a contract which cannot be impaired by any subsequent law. This position is untenable. If a contract at all, it was a contract with the state and not the city; but it was not in fact a contract, but a police regulation imposed by the state in the interest of public safety, which the state might at any time change. The state could not contract away its power to

make such regulations, nor incapacitate itself from making such changes in them from time to time as the public necessities require. *Chicago, M. & St. P. R. Co. v. Milwaukee;* 97 Wis. 418, 72 N. W. 1118.

We entertain no doubt that the intent of the legislature in passing the act of which the section in question forms a part (ch. 540, Laws 1909) was to make a uniform and exclusive system applicable to all cities and other municipalities and to amend all previous provisions on the subject, whether contained in city charters, railroad charters, or the general statutes of the state.

The law seems to be the fruit of an honest and enlightened attempt on the part of the legislature to deal equitably and fairly with a great municipal problem.

*Milwaukee* has during the last half century become a great and prosperous city. Its greatness and prosperity have come because of its commerce, and its commerce has come largely because of its railroads. Without them *Milwaukee* as we know it today would not exist. The growth of the city and of the railroads has been coincident, interdependent, inseparable, and from this growth has arisen the great danger of the grade crossing. Why should not the expense of removing that danger be equitably shared by the different agencies whose joint growth has brought it about?

There are no further contentions which seem to us of sufficient importance to require treatment.

*By the Court.*—Order affirmed.